WAYNE COUNTY v WAYNE COUNTY RETIREMENT COMMISSION

Docket Nos. 259839, 259883. Submitted June 8, 2005, at Detroit. Decided June 28, 2005, at 9:30 a.m.

Wayne County brought an action for a writ of mandamus, declaratory judgment, and injunctive relief in the Wayne Circuit Court against the Wayne County Retirement Commission, the Wayne County Employees' Retirement System Election Commission, and the Wayne County Employees' Retirement System. Pursuant to the Public Airport Authority Act, MCL 259.108 et seq., certain county employees working at two airports formerly operated by the county had transferred their employment to the Wayne County Airport Authority, which now operates those airports. Under the act, those employees remain participants in the county's retirement system until the authority establishes its own, which it has not done. Two authority employees, including one who was a member of the retirement commission, had been nominated for an open trustee seat on that commission. In its action, the county alleged that employees who transferred their employment to the authority were ineligible to vote in an election for or seek election to the retirement commission because they were not county employees, as required by the county's charter and applicable ordinances and rules. The authority intervened as a defendant. The court, Mary Beth Kelly, J., ultimately determined that authority employees were ineligible to seek election to the retirement commission or to vote in an election for a position on that commission. The court granted summary disposition in favor of the county and granted its requests for a declaratory judgment, mandamus, and injunctive relief. The defendants appealed, and the intervening defendant appealed separately. The appeals were consolidated.

The Court of Appeals held:

1. The plain language of MCL 259.119 provides that county employees who transferred employment to the authority remain in the county retirement system as participants, but subject to the conditions of that system. The act protects certain rights of those employees concerning financial benefits. It does not guarantee those employees the same rights and privileges they possessed as

county employees, however, or the same rights as those enjoyed by current county employees. While the act grants the right to participate in the county retirement system, it does not reserve the right to administer or manage that system through election to the retirement commission. The participatory rights of the transferring employees are governed by the local laws applicable to the retirement system.

2. The Wayne County Charter restricts membership on the retirement commission for the trustee seat in question to active county employees. Pursuant to MCL 259.119, the transferred employees are no longer county employees and are ineligible to seek membership on the retirement commission. While the county's retirement ordinance provides that any member of the retirement system may be elected to the retirement commission, the express terms of the charter take precedence.

3. The trial court did not clearly err by rejecting the defendants' claim that the doctrine of laches precluded the county from bringing its action. The basis for the defendants' claim of laches was that the county had not previously contested the eligibility of the authority employee who was a retirement commission trustee or the voting rights of authority employees who participated in the retirement system immediately after enactment of the act. Even if the county's delay in filing the action was unacceptably lengthy, the trial court properly refused to apply the doctrine of laches because there was no showing of prejudice to the defendants. The county charter provision precluding noncounty employees from seeking election to the retirement commission preexisted the employees' option to transfer employment and did not subject them to any new restrictions.

Affirmed.

1. COUNTIES — CHARTER — ORDINANCES — CONFLICTING PROVISIONS.

The express terms of a county's charter take precedence if that charter and a county ordinance conflict.

2. EQUITY — DEFENSES — LACHES.

The defense of laches cannot be recognized if the situation of neither party has changed materially and the delay of one party in asserting a legal right that it is practicable to assert has not put the other in a worse condition or resulted in prejudice to that party.

*Clark Hill PLC* (by *Reginald M. Turner, Jr., Neil H. Goodman,* and *Danon D. Goodrum*) for Wayne County.

*VanOverbeke, Michaud & Timmony, P.C.* (by *Michael J. VanOverbeke, Thomas C. Michaud,* and *Jack Timmony*), for the Wayne County Retirement Commission, the Wayne County Employees' Retirement System Elections Commission, and the Wayne County Employees' Retirement System.

*Monaghan, LoPrete, McDonald, Yakima, Grenke & McCarthy* (by *Thomas J. McCarthy* and *Timothy J. Harrington*) for the Wayne County Airport Authority.

Amici Curiae:

*Martens, Ice, Klass, Legghio & Israel, P.C.* (by *Renate Klass*), for the American Federation of State, County and Municipal Employees (AFSCME) Michigan Council 25; AFSCME Locals 101, 1862, 2057, 2926, and 3317; AFSCME Wayne County Retiree Subchapter 38; Robert Smiley; and Leonard Cranston.

Before: GAGE, P.J., and WHITBECK, C.J., and SAAD, J.

WHITBECK, C.J.

### I. OVERVIEW

#### A. DOCKET NO. 259839

In Docket No. 259839, intervening defendant, the Wayne County Airport Authority (the Authority), appeals as of right the November 1, 2004, order granting summary disposition in favor of plaintiff, Wayne County (the County), and entering judgment for the County in this cause of action for a declaratory judgment and injunctive relief. We affirm.

#### B. DOCKET NO. 259883

In Docket No. 259883, defendants, the Wayne County Retirement Commission (the Retirement Commission),

the Wayne County Employees' Retirement System Election Commission (the Election Commission), and the Wayne County Employees' Retirement System (the Retirement System), appeal as of right the November 1, 2004, order granting summary disposition in favor of the County and entering judgment for the County in this cause of action for a declaratory judgment and injunctive relief. We affirm.

## II. BASIC FACTS AND PROCEDURAL HISTORY

### A. CREATION OF THE AUTHORITY

On March 26, 2002, the Michigan Legislature enacted 2002 PA 90 (Act 90)[1] to transfer the management and operation of qualifying airports from local government to a "public airport authority."[2] Act 90 defined a nonmilitary airport that has ten million or more enplanements within a twelve-month period as a "qualified airport."[3] At the time of the statute's enactment, the Detroit Metropolitan Wayne County Airport (Detroit Metro) and Willow Run Airport were under the operation of the County and were the only two "qualified airports" in the state. Act 90 essentially combined the two airports into the Authority. The Authority was empowered by statute "to manage and operate" the qualified airports and their facilities.[4]

### B. TRANSFER OF EMPLOYEES

Act 90 gave Wayne County employees working at

---

[1] MCL 259.108 *et seq.*, chapter VIA of the Aeronautics Code of the State of Michigan.

[2] MCL 259.109; MCL 259.110. See also *Wayne Co Bd of Comm'rs v Wayne Co Airport Auth*, 253 Mich App 144; 658 NW2d 804 (2002) (upholding the constitutionality of Act 90).

[3] MCL 259.109(n).

[4] MCL 259.110(2).

Detroit Metro and Willow Run Airport the option to transfer their employment to the Authority or to remain county employees and be reassigned within the county government.[5] The majority of Wayne County employees working at those airports chose to become employees of the Authority. Under Act 90, an individual who chose to transfer employment to the Authority or who becomes a new employee of the Authority "shall remain or become a participant in the local government retirement system until the authority has established its own retirement system or pension plan."[6] About 714 employees of the Authority remained participants in the Retirement System because the Authority had not yet established a retirement system or pension plan. Under Act 90, the Authority was obligated to make employer contributions to the Retirement System on behalf of those employees who transferred employment to the Authority but remained participants in the Retirement System.[7] Act 90 also required the Authority to assume the obligations of any collective bargaining agreements covering employees who transferred employment from Wayne County to the Authority.[8]

### C. THE RETIREMENT SYSTEM

Wayne County's charter and enabling ordinances established the Retirement System to provide "retirement income to eligible employees and survivor benefits." Wayne County Charter, § 6.111. The Retirement Commission is the administrative body responsible for overseeing the operational and administrative functions of the Retirement System. Pursuant to § 6.112 of

[5] MCL 259.119(2).

[6] MCL 259.119(3).

[7] MCL 259.117(1)(d).

[8] MCL 259.119(1).

the charter and § 141-35 of the Wayne County ordinances, the Retirement Commission consists of eight trustees, including the chairperson of the county board of commissioners, the county executive, and six other members who are elected to their seats. The Retirement Commission created the Election Commission to supervise the elections. Generally, nominations for office must be filed with the director of Wayne County's Department of Personnel/Human Resources, who is responsible for certifying the eligibility of candidates.

### D. ELECTIONS TO THE RETIREMENT COMMISSION

The term for one of the elected seats on the Retirement Commission represented by active members of the Retirement System was due to expire on December 31, 2004. On July 27, 2004, the Director of Retirement, Ronald Yee, posted a notice to all members of the Retirement System regarding an upcoming election for the open trustee seat. The notice informed the members that a primary election would be held on November 1, 2004, followed by a general election on December 13, 2004. Robert E. Murphy and Raymond J. Lambert, former Wayne County employees who transferred employment to the Authority, were two of five nominees for the active member seat. Murphy was an elected trustee of the Retirement Commission at that time.

On September 27, 2004, Yee sent a letter to Pamela Travis, the chairperson of the Election Commission, certifying the names of the five individuals who filed satisfactory nominating petitions. Subsequently, the Election Commission approved the five candidates for incorporation on the primary election ballot. Lisa Laginess, a department executive in Personnel Information Services, then sent the original petitions, along with a letter containing information about the nominees, to

Yee. Laginess also mailed letters to the nominees, including Murphy and Lambert, advising them that their names were to be placed on the primary election ballot.

However, Timothy Taylor, director of the Department of Personnel/Human Resources for Wayne County, subsequently sent a letter to Yee rescinding Laginess's letter and explaining that his office "inadvertently forwarded the original nominating petitions" to Yee's office before the mandatory petition review process had been conducted. Taylor requested that Yee return the nominating petitions for completion of the review process. Taylor also mailed letters to Murphy and Lambert rescinding Laginess's letters and advising that their names could not be placed on the ballot for the primary election because they were ineligible candidates since they were no longer Wayne County employees. Taylor further sent a letter to Travis requesting that she schedule an Election Committee meeting to approve the ballot for the primary election after completion of the mandatory review process. Taylor explained, "I have determined that two candidates are ineligible to participate in the election process because they are no longer Wayne County employees. . . . [T]he nominating petitions submitted by Mr. Lambert and Mr. Murphy are invalid and their names cannot appear on the ballot."

Yee responded to Taylor's letter by e-mail, explaining that the Election Commission had already certified all five names for the ballot and that a legal review of the matter was pending. Yee refused to return the nominating petitions. Apparently, the Retirement Commission, with the Election Commission's oversight, intended to continue with the primary election using ballots naming Murphy and Lambert as candidates.

E. THE COUNTY'S COMPLAINT

On October 12, 2004, the County filed a complaint for a writ of mandamus, declaratory judgment, and injunctive relief against defendants. The County alleged that Authority employees who remained in the Retirement System were ineligible to vote in an election for and seek election to the Retirement Commission because they were not "active members" as defined under the Wayne County Charter, retirement ordinance, and election rules, and only names of "active members" may be placed on the ballot for elections to the Retirement Commission.

The County also filed a motion for a temporary restraining order, show cause order, and preliminary injunction based on the irreparable harm that would result if the names of Murphy and Lambert remained on the ballots for the primary and general elections. Defendants opposed the County's request, contending that the Retirement Commission had the authority to establish the rules and regulations guiding the elections of member representatives and that it was acting within its authority in seeking to conduct the contested elections.

On October 12, 2004, the trial court entered an order temporarily restraining defendants from placing the names of Murphy and Lambert, or the names of any other individuals not certified as active employees by the Wayne County Department of Personnel/Human Resources, on the primary or general election ballots, printing the ballots, and holding the elections until the trial court ruled on the motion for declaratory judgment. The trial court also ordered defendants to show cause why a preliminary injunction should not be ordered and a writ of mandamus should not be issued in this matter.

On October 15, 2004, the Authority filed a motion to intervene, contending that, as the employer for approximately 750 employees participating in the Retirement System, it was interested in ensuring the rights, privileges, and benefits of its employees under Act 90. Also on October 15, 2004, Patrick Melton, one of the other nominees for the trustee seat, filed a motion to intervene as a defendant. Melton requested that the trial court dismiss the County's claim and permit the election to proceed as scheduled. Moreover, the American Federation of State, County and Municipal Employees (AFSCME), the union representing several of the former Wayne County employees who transferred employment to the Authority, filed a motion to intervene as a defendant. AFSCME contended that, under collective bargaining agreements with the County that the Authority assumed, employees represented by AFSCME were designated and remained members of the Retirement System with the rights to fully participate in the Retirement System that included the ability to vote and seek election.

After a hearing and oral arguments, the trial court granted the Authority's motion to intervene as a defendant. However, the trial court denied Melton's motion to intervene after finding that Melton failed to assert a position on the main legal issue of this case and "intervention would then serve no purpose." The trial court also denied AFSCME's motion to intervene after finding that the employees it represented lacked legal standing and that their interests were aligned with the interests of the Authority. The trial court also ordered that the temporary restraining order remain in effect until further order.

### G. THE TRIAL COURT'S DECISION

On October 20, 2004, the trial court heard oral arguments on the County's motion for a preliminary injunction. At the hearing, the trial court determined that the issue was a matter of law and that there were no operative facts in dispute. The trial court stated that it would "adjudicate this matter as a motion for summary disposition pursuant to MCR 2.116(I)."

On October 25, 2004, the trial court issued an opinion. The trial court found that Authority employees were ineligible to seek election to the Retirement Commission and indicated that it intended to grant the County's request for declaratory relief. Specifically, the trial court concluded:

> Based on the foregoing, this Court will grant the County's request for declaratory judgment to the extent that the Court finds that, only active employees of the County are eligible to be on the ballot for the election for the Commission. Hence, in general, Airport Authority employees, and in particular, Murphy and Lambert, are not eligible to seek a seat on the Commission. Further, the Court will issue a writ of mandamus or an injunction that enjoins the defendants from placing on the ballot for election to the Commission the names of Airport Authority employees, specifically the names of Murphy and Lambert.

On November 1, 2004, the trial court entered an order in accordance with its prior opinion, granting summary disposition in favor of the County pursuant to MCR 2.116(I)(1) and entering judgment for the County by granting its requests for a declaratory judgment, mandamus, and injunctive relief. Regarding the declaratory judgment, the trial court ordered that

> only active employees of the County of Wayne are entitled to have their names placed on the ballot for the election for the Wayne County Retirement Commission, and specifi-

cally that former employees of the County of Wayne who are now employees of the Wayne County Airport Authority, including Raymond J. Lambert and Robert E. Murphy, are not eligible to have their names placed on the ballot for the election for the Wayne County Retirement Commission[.]

Regarding mandamus and injunctive relief, the trial court ordered that

the defendants, including their officers, agents, representatives and/or employees, are permanently restrained and enjoined from placing any names on the ballot for the primary and election of persons who are currently employees of the Wayne County Airport Authority, including Raymond J. Lambert and Robert E[.] Murphy.

### H. POST-DECISION PROCEEDINGS

On November 1, 2004, the Authority filed a motion for clarification of the trial court's opinion, contending that the trial court's opinion failed to "fully address the rights of the Wayne County Airport Authority and its employees to participate in the Wayne County Retirement System." The Authority requested that the trial court issue an opinion answering the following questions:

(a) Can Wayne County Airport Authority employees vote in the election of the active trustee position on the Wayne County Retirement Commission?

(b) Can retired Wayne County Airport Authority employees seek election and vote in the election of the retired trustee position on the Wayne County Retirement Commission?

(c) Are Wayne County Airport Authority employees "members" of the Wayne County Retirement System entitled to receive the rights, privileges and benefits of membership in the Retirement System?

(d) Can the Airport Authority and Airport Authority employees continue to make contributions to the Retirement System?

On November 11, 2004, the trial court entered an order staying the proceedings pending appeal. The order provided that the judgment was stayed and the temporary restraining order continued pending this Court's decision on the motions for expedited appeal and for immediate consideration. The order further provided that if these motions were granted, "then the stay shall remain in effect pending the final judgment of the Michigan Court of Appeals." The order also provided that "[s]hould the term of the active employee trustee seat on the Retirement Commission expire on December 31, [2004], without a final judgment of the Michigan Court of Appeals, then the seat shall remain vacant until a superseding order is rendered by the Michigan Court of Appeals." However, the order provided that if this Court denied the motion for expedited appeal, the stay would be vacated and the defendants must schedule primary and general elections according to the terms in the order.

On November 15, 2004, defendants filed a motion for reconsideration. Defendants contended that they were not afforded the opportunity to file supporting documentation and offer appropriate evidence to support their arguments, and that there was recent, additional support for their position that would have changed the outcome of the case.

On November 18, 2004, after hearing oral arguments on the matter, the trial court entered an order granting in part and denying in part the Authority's motion for clarification of the opinion. The trial court clarified its prior order as follows:

[T]he intervening defendant's employees are not eligible to vote in the election for the active trustee position on the Wayne County Retirement Commission. . . . [R]etired employees of the intervening defendant are not eligible either to seek election or to vote in the election of the retired trustee position on the Wayne County Retirement Commission. . . . [E]xcept as otherwise provided for by pertinent Michigan statutes, including MCL 259.119, for purposes of the Wayne County Retirement Ordinance, the intervening defendant's employees are not members of the Wayne County Retirement Commission who are entitled to receive the rights, privileges and benefits of membership in the Wayne County Retirement System.

The trial court refused to address the Authority's request for clarification of whether the Authority and its employees may continue contributing to the Retirement System.

On November 30, 2004, the trial court entered an order denying defendants' motion for reconsideration. On December 20, 2004, defendants filed a claim of appeal from the trial court's order granting summary disposition in favor of the County and entering judgment for the County. On December 21, 2004, the Authority filed a claim of appeal from the trial court's order granting summary disposition in favor of the County and entering judgment for the County.

On December 21, 2004, the Authority filed motions for peremptory reversal, immediate consideration, stay, and expedited appeal. On December 22, 2004, defendants filed motions for peremptory reversal, immediate consideration, and expedited appeal. On February 3, 2005, this Court entered an order granting the Authority's motions for immediate consideration and for expedited appeal, but denying its motion for peremptory reversal pursuant to MCR 7.211(C)(4). Also on Febru-

ary 3, 2005, this Court entered an order granting defendants' motions for immediate consideration and for expedited appeal, but denying their motion for peremptory reversal pursuant to MCR 7.211(C)(4). On its own motion, this Court ordered consolidation of the appeals in Docket Nos. 259883 and 259839.

### III. PARTICIPATION BY AN AUTHORITY EMPLOYEE IN THE RETIREMENT SYSTEM

#### A. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition.[9] This Court also reviews de novo a trial court's decision concerning summary disposition in an action for declaratory judgment.[10] Moreover, the interpretation and application of a statute is a matter of law that is subject to review de novo.[11]

#### B. STATUTORY INTERPRETATION

When interpreting statutory language, the primary goal is to discern and give effect to the legislative intent that may reasonably be inferred from the language of the statute.[12] When the language of the statute is certain or unambiguous, judicial construction is unnecessary, and a court must merely apply the terms of the statute as written to the circumstances of the given case.[13] A court will not read into a clear statute that which is not within the manifest intention of the

---

[9] *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002).

[10] *Breighner v Michigan High School Athletic Ass'n, Inc*, 255 Mich App 567, 570; 662 NW2d 413 (2003), aff'd 471 Mich 217 (2004).

[11] *Veenstra, supra* at 159.

[12] *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004).

[13] *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995).

Legislature as derived from the statute itself.[14] The appropriate standard for discerning if a statute is ambiguous is not whether reasonable minds could differ regarding the meaning of the statute.[15] Rather, "a provision of the law is ambiguous only if it 'irreconcilably conflict[s]' with another provision, . . . or when it is *equally* susceptible to more than a single meaning."[16] Under this traditional standard, "only a few provisions are truly ambiguous" and "a diligent application of the rules of interpretation will normally yield a 'better,' albeit perhaps imperfect, interpretation of the law . . . ."[17]

In construing a statute, courts must give the words of the statute their common and ordinary meaning.[18] Moreover, a court must "give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory."[19] When enacting legislation, the Legislature is presumed to have knowledge of existing laws and to have considered the effect of new laws on the existing laws.[20] The rules of statutory construction apply to ordinances[21] and city charters.[22]

[14] *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305, 311; 596 NW2d 591 (1999).

[15] *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 165-166; 680 NW2d 840 (2004).

[16] *Id.* at 166, quoting *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003) (emphasis in *Lansing Mayor*).

[17] *Lansing Mayor, supra* at 166.

[18] *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

[19] *Id.*

[20] *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993).

[21] *Gora v City of Ferndale*, 456 Mich 704, 711; 576 NW2d 141 (1998).

[22] *Detroit v Walker*, 445 Mich 682, 691; 520 NW2d 135 (1994).

## C. THE ENACTMENTS AT ISSUE

### 1. ACT 90

The claim at issue requires consideration of three distinct but related legal authorities. The first is Act 90, which permits transferring employees to remain "participants" in the Retirement System. The statute provides in relevant part:

(2) Local government employees employed at an airport from which operational jurisdiction will be transferred to an authority may agree to transfer to the employment of the authority on or before a date established by the authority. The date established by the authority shall not be later than the approval date. Local government employees, who do not agree to transfer to the employment of the authority, shall be reassigned within the local government. The local government shall not, as a result of the creation or incorporation of an authority for a period of not more than 1 year, layoff [sic] or reduce the pay or benefits of any employee of the local government into whose position a local government employee who was previously employed at the airport is reassigned. The authority shall consider any person hired by the authority to fill a position that had been previously filled with a local government employee who did not agree to transfer to the employment of the authority to be under the collective bargaining agreement covering, and to be represented by the collective bargaining representative of, the local government employee who did not agree to transfer to the authority. The authority shall accept the transfers without a break in employment, subject to all rights and benefits held by the transferring employees under a collective bargaining agreement. Transferring employees shall not be placed in a worse position by reason of the transfer for a period of 1 year after the approval date, or any longer period as may be required in connection with the assumption of any applicable collective bargaining agreement, with respect to wages, workers' compensation, pension, seniority, sick leave, vacation, or health and welfare insurance or any other term and

condition of employment that a transferring employee may have under a collective bargaining agreement that the employee received as an employee of the local government. . . . *Employees who elect to transfer shall not by reason of the transfer have their accrued local government pension benefits or credits diminished. . . .*

(3) If a local government employee described in this section elects to transfer to an authority or if a person is hired by the authority as a new employee after the date on which the authority assumes operational jurisdiction over an airport, *the employee shall remain or become a participant in the local government retirement system until the authority has established its own retirement system or pension plan.* During this period the employee remains or is a participant in the local government system, the employee's post-transfer service with the authority during this period and his or her post-transfer compensation from the authority during this period shall be counted in determining both eligibility for and the amount of pension benefits that the employee will be eligible to receive from the local government system or plan.

(4) *If a local government employee described in this section elects to transfer to the authority, then the transferred employee may elect to remain a participant in the local government retirement system in lieu of participation in any retirement system or pension plan of the authority.* By electing to remain a participant in the local government system, the employee's post-transfer service with the authority and his or her post-transfer compensation from the authority shall be counted in determining both eligibility for and the amount of pension benefits that the employee will be eligible to receive from the local government system or plan. . . . Employees eligible to make the election described in this subsection shall be those employees who immediately before their transfer date were participating in the local government system and who agree to make any employee contributions required for continuing participation in the local government system and also agree to meet all requirements and be subject to all conditions which,

from time to time, apply to employees of the local government who participate in the local government system.[23]

### 2. THE WAYNE COUNTY CHARTER

Second, Wayne County Charter, § 6.112 pertains to the structure of the Retirement Commission and the election of individuals to the Retirement Commission, and provides:

> The Retirement Commission is composed of 8 members: The CEO or the designee of the CEO, the chairperson of the County Commission, and 6 elected members. *The members must be residents of Wayne County. Four members shall be active employees elected by active employees of the County in the manner provided by ordinance and 2 members shall be retired employees elected by retired employees of the County in the manner provided by ordinance.* The term of the elected members is 4 years. The Retirement Commission shall administer and manage the Retirement System. The costs of administration and management of the Retirement System shall be paid from the investment earnings of the Retirement System. [Emphasis added.]

### 3. THE WAYNE COUNTY ORDINANCE

Third, Wayne County Ordinance, § 141-35(a)(1)c, describing the composition of the Retirement Commission, states that it includes

> [f]our members of the retirement system, who are residents of the county, to be elected by the members of the retirement system [sic]. Each member trustee shall be from a different county department ... : [several county departments are listed]. Employees of all other county agencies shall be considered collectively to be employees of one additional county department for the purposes of this provision.

---

[23] MCL 259.119 (emphasis added).

### D. THE PLAIN LANGUAGE OF ACT 90

We conclude, as did the trial court, that it is unnecessary to look beyond the language of Act 90 to determine whether Authority employees and retirees are eligible to vote for and be elected as trustees to the Retirement Commission. Generally, courts must construe provisions of the law on the same subject or sharing a common purpose as harmonious.[24] Because subsections 119(3) and 119(4) of Act 90 both relate to the retirement benefits of an employee who elects to transfer employment from Wayne County to the Authority, we must read them so that they harmonize. The plain language of the two subsections provides that those employees opting to transfer employment to the Authority and remain in the Retirement System, whether before the Authority creates its own retirement system or after such an event, do so as "participants" in the Retirement System.[25] In addition, the transferring employees who remain in the Retirement System are to be subject to the "conditions" of that system.[26]

Act 90 therefore does *not* guarantee employees of the Authority the same rights and privileges they possessed while employees of Wayne County or the same rights as those enjoyed by current employees of Wayne County. A general principle of statutory construction is the doctrine of *expressio unius est exclusio alterius*, which means the express mention of one thing implies the exclusion of another.[27] Act 90 enumerates certain rights

---

[24] See *Rockwell v Crestwood School Dist Bd of Ed*, 393 Mich 616, 648; 227 NW2d 736 (1975) (WILLIAMS, J., dissenting).

[25] MCL 259.119(3).

[26] MCL 259.119(4).

[27] *Bradley v Saranac Community Schools Bd of Ed*, 455 Mich 285, 298; 565 NW2d 650 (1997).

protected, including "wages, workers' compensation, pension, seniority, sick leave, vacation, or health and welfare insurance or any other term and condition of employment . . . ."[28] Regarding a transferring employee's pension, Act 90 specifically protects the employee's right to have "post-transfer service" and "post-transfer compensation" counted toward eligibility for and the amount of pension benefits to be received from the local government retirement system.[29] Act 90 also provides that transferring employees shall not have their "accrued local government pension benefits or credits diminished."[30] Therefore, Act 90 clearly protects transferring employees' financial benefits. It does *not* provide transferring employees the right to vote in elections for the Retirement Commission or to seek and hold a position on the Retirement Commission.

Similarly, Act 90 grants Authority employees the right to participate in "the local government retirement system."[31] However, it does *not* reserve the right to administer or manage that system through election to the Retirement Commission. Self-evidently, the rights of Authority employees regarding participation in the Retirement System exist only to the extent that Act 90 clearly grants them. Because the Legislature was silent regarding the voting and election rights under the Retirement System, it would be entirely improper for this Court to read into the statutory language a provision guaranteeing Authority employees such rights.[32] Moreover, this Court is precluded from creating a provision that is not present in a statute merely because

---

[28] MCL 259.119(2).

[29] MCL 259.119(3) and (4).

[30] MCL 259.119(2).

[31] MCL 259.119(3) and (4).

[32] *Omne Financial, supra* at 311.

it may have made sense for the Legislature to do so.[33] Accordingly, the participatory rights of transferring employees are governed by the local laws governing the local retirement system or, in this case, by the charter and the retirement ordinance for Wayne County. Because the statute does not contain provisions directly conflicting with the local law as provided in the charter and the retirement ordinance, the doctrine of preemption is inapplicable.

### E. APPLICATION OF THE CHARTER AND THE RETIREMENT ORDINANCE

Pursuant to the Wayne County Charter, § 6.112, membership on the Retirement Commission for the open seat is explicitly restricted to "active employees . . . of the County." Under the substantive provisions of Act 90, employees of Wayne County may elect to transfer employment to the Authority or remain employees of Wayne County.[34] Accordingly, Authority employees are no longer employees of Wayne County and, under the charter, are ineligible to seek membership on the Retirement Commission. We note, as did the trial court, that the retirement ordinance defines the composition of the Retirement Commission in broader terms than the charter. According to the retirement ordinance, any "member" of the Retirement System may be elected to the Retirement Commission. According to the charter, membership on the Retirement Commission is expressly limited to "active employees . . . of the County" and the election is to be conducted in "the manner provided by ordinance." Although, in general, provisions of the law on the same or similar subject must be

---

[33] *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 152-153; 662 NW2d 758 (2003).

[34] MCL 259.119.

construed as harmonious, where an ordinance and a charter conflict, the express terms of the charter take precedence.[35] Because the charter explicitly restricts eligibility to seek election to the Retirement Commission to employees of Wayne County, the retirement ordinance cannot provide for greater or lesser rights than those expressed in the charter.[36] Therefore, we construe the two provisions to mean, with respect to election to the Retirement Commission, that membership in the Retirement System is synonymous with active employment with Wayne County.

We note that, contrary to the Authority's assertion, the charter and the retirement ordinance envision more than two classes of persons, that is, members and retirees. We further note that even before enactment of Act 90, the Retirement System contained participants without voting and election privileges. Both the charter and the retirement ordinance preclude participants who are not residing in Wayne County and who are spousal beneficiaries from voting in elections for or seeking election to the Retirement Commission. Therefore, the Retirement System can contain both employee members and nonemployee participants.

Moreover, the trial court's judgment and postjudgment orders do not prohibit the participation expressly provided under Act 90. The trial court refused to clarify its ruling by addressing whether Authority employees were permitted to continue making contributions to the Retirement System. The trial court reasoned that the issue of continued contributions was not raised before it and did not necessarily follow from its analysis of this case. The trial court further reasoned that the issue "is

---

[35] *Bivens v Grand Rapids*, 443 Mich 391, 400-401; 505 NW2d 239 (1993).

[36] *Id.*

directly dealt with by the statute" and needed no clarification. Thus, the trial court allowed the "participation" expressly provided for in Act 90 while—properly, in our view—declining to rule on matters not before it.

### IV. LACHES

#### A. STANDARD OF REVIEW

We review a trial court's application of the doctrine of laches for clear error.[37] "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made."[38]

#### B. APPLYING THE DOCTRINE

"The doctrine of laches is a tool of equity that may remedy ' "the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert." ' "[39] This doctrine applies to cases in which "there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party."[40] "Generally, ' "[w]here the situation of neither party has changed materially, and the delay of one has not put the other in a worse condition, the defense of laches cannot . . . be recognized." ' "[41]

---

[37] *City of Jackson v Thompson-McCully Co, LLC*, 239 Mich App 482, 492; 608 NW2d 531 (2000).

[38] *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002), citing *In re Attorney Fees & Costs (Septer v Tjarksen)*, 233 Mich App 694, 701; 593 NW2d 589 (1999).

[39] *Dep't of Public Health v Rivergate Manor*, 452 Mich 495, 507; 550 NW2d 515 (1996) (citations omitted).

[40] *Id.*

[41] *Kuhn v Secretary of State*, 228 Mich App 319, 334; 579 NW2d 101 (1998) (citation omitted).

The basis for defendants' claim of laches was that the County contested neither Murphy's eligibility to remain a trustee on the Retirement Commission nor the voting rights of Authority employees who participated in the Retirement System immediately after the enactment of Act 90. The County, however, contended that the reason it brought this action at this time was that a controversy arose because of the impending opening of a trustee seat and the certification of a ballot for the related election with what the County deemed were candidates ineligible under Act 90. The trial court rejected defendants' claim that the doctrine of laches precluded the County from filing this action because "defendants have not come forward with any showing that the delay of the County in asserting its position that Airport Authority employees may not seek to be elected to the Commission in any way prejudiced the defendants, the Airport Authority employees or those who presently sit on the Commission."

Even assuming that the County's delay in filing this action was unacceptably lengthy, we conclude that the trial court properly refused to apply the doctrine of laches to bar the County's lawsuit because there was no showing of prejudice to defendants. The County claimed that only employees of Wayne County were eligible to vote and seek election to the Retirement Commission under the applicable rules governing the Retirement System. As we have concluded above, the limitations on participation expressed in Act 90, the charter, and the retirement ordinance did not deny employees transferring their employment from Wayne County to the Authority the right to participate in their prior pension plans. Rather, these enactments made the participation of such transferring employees subject to the conditions of the Retirement System. One of the conditions of the charter, which was in existence at the time that the

employees could elect to transfer their employment, precluded individuals not employed by Wayne County from seeking election to the Retirement Commission. Therefore, we conclude that seeking to apply this pre-existing condition to Authority employees did not subject them to any *new* restrictions. It necessarily follows that transferring employees cannot claim prejudice from any delay in bringing this action.

Affirmed.