# STATE OF MICHIGAN

# COURT OF APPEALS

JORDEN CHANCE KULHANEK,

Plaintiff-Appellant,

v

ALAN A. CRAWFORD and JOHN E. MELTON,

Defendants-Appellees.

UNPUBLISHED
August 14, 2018

No. 341849
Saginaw Circuit Court
LC No. 17-034163-NM

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

The circuit court summarily dismissed Jorden Kulhanek's legal malpractice and fraud claims against two attorneys he retained to represent him during a criminal proceeding. Those attorneys secured a favorable plea agreement and lenient sentence for their client in exchange for his testimony against a codefendant. Kulhanek failed to adequately plead his claims or to create triable issues of material fact to place before a jury. Moreover, the circuit court did not clearly err in determining that Kulhanek was aware of these deficiencies when he filed his complaint, meriting sanctions. We affirm.

## I. BACKGROUND

On November 6, 2015, Jorden Kulhanek and Isaac Bowling went on a vehicle breaking-and-entering spree. Afterward, Bowling asked Kulhanek to drive him to a home in Chesaning. Bowling entered alone, armed, and robbed the home with its elderly residents inside. Bowling's and Kulhanek's roles in this heist were established by a series of text messages between the pair and cell phone tower data placing them in the vicinity of the robbery at the right time. See *People v Bowling*, unpublished per curiam opinion of the Court of Appeals, issued May 24, 2018 (Docket No. 336769), unpub op at 1-2. Kulhanek also admitted that the police found robbery proceeds on his dresser.

On July 26, 2016, Kulhanek entered a guilty plea to one charge each of first-degree home invasion, conspiracy to commit breaking and entering with intent to commit a larceny inside, and breaking and entering with intent to commit a larceny inside, and three counts of felony-firearm. Kulhanek promised to cooperate with the investigation and prosecution of Bowling. The prosecutor noted that Kulhanek also gave information against other individuals for less serious offenses that might lead to additional arrests. In exchange for his plea and cooperation, the prosecutor dismissed an armed robbery charge and a fourth felony-firearm charge. The Midland

-1-

County Prosecutor's Office also agreed not to file charges for offenses committed in that county on the night in question. And the court and the prosecution agreed to within-guidelines sentences. At the plea hearing and under oath, Kulhanek indicated that no one had promised him anything beyond that stated on the record, no one had threatened him, and that he was pleading guilty voluntarily. He then indicated under oath that he served as the getaway driver and lookout during the home invasion.

On August 30, 2016, Kulhanek moved to fire his retained attorney, John Melton, and hire replacement counsel. In a letter to the court, Kulhanek indicated, "[M]y lawyer is misrepresenting me. He's talked me into taking this plea. He lead [sic] me to believe something other then what's happening. He had me say things I didn't do to except [sic] this plea."

At a hearing on September 12, 2016, the court granted Kulhanek's motion and he retained Alan Crawford in Melton's stead. At the hearing, Melton indicated, "I'm not exactly sure what happened. As far as I know, we were on the same page." Kulhanek had apparently notified the court in another letter that is not included in the lower court record that "he wanted to withdraw his plea," but that Melton had not filed the requested motion. The court asked Kulhanek if he actually had talked to Melton about "wanting to withdraw [his] plea." Kulhanek indicated that he had not broached the subject with Melton "[b]ecause I - - I just thought about it, and I talked to a lawyer about it [Crawford] . . . and he said he's going to take my case." The court advised Kulhanek that only sentencing remained and that his sentence was dependent upon his adherence to the plea agreement. The court further warned Kulhanek that it was not required to grant his potential motion to withdraw his plea and that if it was granted, he would face new consequences that he should discuss with counsel.

In October 2016, Kulhanek testified against Bowling at his criminal trial. That testimony is summarized in this Court's opinion affirming Bowling's convictions. See *Bowling*, unpub op at 1-2. After that trial, Crawford filed a sentencing memorandum on Kulhanek's behalf, requesting leniency given his otherwise clean record and cooperation.

At the outset of the sentencing hearing on November 1, 2016, the court noted, "You've been handed a form explaining your right to appeal that includes a space for you to request a lawyer. Your request for an attorney must be made within 42 days of today's date." Crawford then asked the court to sentence Kulhanek leniently, citing Kulhanek's otherwise clean record, his cooperation with authorities, and his minimal role in the home invasion. Kulhanek stated under oath that he took "full responsibility for [his] actions" and that he felt "terrible for what happened." Before sentencing Kulhanek, the judge reminded him that she had presided over Bowling's trial and heard Kulhanek "admit[] involvement in other car offenses, breaking-and-enterings," and that he had disposed of the weapon used by Bowling. Kulhanek's minimum sentencing guidelines range was 51-85 months and the court sentenced him to concurrent terms of 70 months to 20 years for home invasion, 48 months to 10 years for conspiracy, and 36 months to 10 years for breaking and entering, to be served consecutively with three concurrent two-year terms for felony-firearm.

Kulhanek did not request appellate counsel within 42 days as advised by the court and the advice of rights form. Instead, he filed a delayed request on February 24, 2017. The trial court denied the motion, noting that Kulhanek had signed the advice of rights form in court. Kulhanek

then filed an in pro per motion to withdraw his guilty plea and requesting a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). In a follow-up brief, Kulhanek accused Crawford of not giving him copies of the notice of appellate rights, transcripts, and other documents, making him miss the 42-day deadline. The court treated Kulhanek's filings as a motion for reconsideration of his request for appellate counsel. The court denied the motion, but provided Kulhanek with copies of the hearing transcripts, his sentencing information report, and presentencing information report.

In Docket No. 338832, Kulhanek filed an in pro per delayed application for leave to appeal his plea-based convictions and sentences. Kulhanek alleged that Melton rendered ineffective assistance by waiving his right to a preliminary examination. He alleged that Crawford rendered ineffective assistance by filing a sentencing memorandum on his behalf as Kulhanek had hired Crawford to file a motion to withdraw his guilty plea and to remand to the district court for a preliminary examination. Kulhanek then alleged that Crawford had promised to file his request for appellate counsel and claim of appeal but failed to do so because Kulhanek's grandfather was unable to pay a retainer of $25,000. Kulhanek filed his delayed request as soon as he learned of counsel's inaction, he asserted. Kulhanek further requested this Court to remand for a *Ginther* hearing. This Court ultimately denied Kulhanek's application and remand request. *People v Kulhanek*, unpublished order of the Court of Appeals, entered December 11, 2017 (Docket No. 338832).

In the meantime, Kulhanek filed grievances against Melton, Crawford, and the prosecutor who handled his criminal case with the Attorney Grievance Commission (AGC). Kulhanek accused Melton of working with the prosecutor and the Michigan State police trooper in charge of the investigation to file false charges against him. With the threat of these false charges, Kulhanek continued, Melton, the prosecutor, and the trooper coerced him to make a false police statement, take a "false" polygraph examination (which he failed), and then to give false testimony against Bowling. Kulhanek complained that Crawford exceeded the scope of his employment and filed a sentencing memorandum rather than motions to withdraw his guilty plea and to remand to the district court for a preliminary examination. After Crawford was hired, Kulhanek informed him that his police statement against Bowling was false, but Crawford allegedly convinced him to testify falsely against Bowling at his October 2016 trial. Finally, Kulhanek accused Crawford of withholding the appellate advice of rights form because he could not pay $25,000, causing him to miss his appellate filing deadline.

The AGC declined to investigate Kulhanek's complaints against Melton and Crawford, stating that he should file an appeal claiming ineffective assistance of counsel. Kulhanek has not provided to this Court his AGC complaint against the prosecutor. However, the AGC declined to investigate that claim as well, noting that it is within the prosecutor's discretion to charge criminal defendants and that claims of prosecutorial misconduct should be reviewed by an appellate court, not the AGC.

On August 31, 2017, Kulhanek filed a 23-page civil complaint against Melton and Crawford, seeking $2 million in damages and alleging fraud and legal malpractice. Kulhanek reiterated his accusation that Melton "worked in concert with" the police trooper to file "bogus" charges against him. Melton then waived Kulhanek's preliminary examination so the prosecutor could file charges against him without probable cause and use those charges to "trick" Kulhanek

into giving false testimony against Bowling. To support the negligence element of his legal malpractice claim, Kulhanek alleged that Melton worked with the prosecutor to convince him to lie "to improperly convict" Bowling. Kulhanek noted that Bowling might be entitled to a new trial once the courts realized that his testimony was false. And Kulhanek cited his own injury as being convicted and sentenced based on a false plea.

Kulhanek again alleged that he informed Crawford of Melton's improper conduct and that Crawford hid this information from the court. Instead of revealing Kulhanek's false statement, Crawford "forced" him to give perjured testimony at Bowling's trial. Kulhanek accused Crawford of committing fraud by filing a sentencing memorandum instead of filing a motion to remand for a preliminary examination and to withdraw his plea. Kulhanek asserted a claim of fraudulent concealment, claiming that Crawford denied him access to the courts by failing to file his request for appointed appellate counsel within 42 days because he could not afford Crawford's requested $25,000 fee. This resulted in Kulhanek being denied counsel and evidenced that Crawford "[p]lanned to prevent inquiry . . . or escape investigation" into his presentation of his client's false testimony against Bowling. As to the negligence required to establish legal malpractice, Kulhanek cited Crawford's failure to file a claim of appeal or to move to have Kulhanek's "illegal" plea withdrawn.

In lieu of an answer, Melton filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10), in which Crawford joined. Melton described that he undertook "extensive negotiations" with the prosecutor, after which Kulhanek signed a plea agreement and promised to testify against Bowling. As a result of this plea, Kulhanek received reduced charges and "a much lower sentence" for a serious felony. Kulhanek apparently recognized the benefit of this bargain as he accepted the plea and testified against Bowling even after he fired Melton. And Kulhanek's longest minimum sentence was 70 months, less than six years, compared to Bowling's minimum 12-year sentence. Melton emphasized that by accusing his attorneys, the prosecutor, and the trooper of collaborating to coerce him into making false statements, Kulhanek implicated himself in two additional felonies: making a false statement to the police and perjury. Even if Kulhanek did lie in his statements, Melton asserted that neither he nor Crawford had any way to know that; only Kulhanek could know the truth of what happened that night.

In relation to Kulhanek's legal malpractice claim, Melton contended that Kulhanek had alleged no negligence, only deliberate conduct: forcing him to lie. As deliberate conduct is insufficient to establish negligence, Melton asserted that he was entitled to summary disposition of the legal malpractice claim under MCR 2.116(C)(8). Melton argued that he was also entitled to summary disposition under (C)(10) as Kulhanek had not come forward with any evidence to prove that his attorneys coerced him into making a false statement. A plaintiff must do more than pledge to come forward with evidence in response to a summary disposition motion, Melton continued.

In relation to Kulhanek's fraud counts, Melton argued that a plaintiff must plead those claims with particularity. For example, Kulhanek would need to allege the time, place, and content of his attorneys' fraudulent statements and describe the benefit to the speaker. Kulhanek failed in this regard.

-4-

Finally, Melton asserted that Kulhanek's civil complaint was completely frivolous. The complaint was "a combination of a shakedown with the hopes of some quick cash and a vehicle to lash out at his attorneys, who he blames for his current troubles." The complaint, however, was "completely devoid of arguable legal merit," as Kulhanek well knew. Melton therefore sought reimbursement of his costs in defending the action.

Kulhanek initially requested additional time to respond to Melton and Crawford's joint motion for summary disposition. Before the court could respond, however, Kulhanek filed his brief in opposition. Kulhanek asserted that the trial court in his criminal case granted his motion to fire Melton because his "representation so prejudiced [Kulhanek] as to deprive [him] of a fair trial." Kulhanek repeated that he hired Crawford to file a motion to remand to the district court for a preliminary examination and to move to withdraw his plea but that Crawford filed a sentencing memorandum instead. This amounted to negligence, Kulhanek asserted. Kulhanek also repeated that Melton worked in concert with the police and the prosecutor to convince him to waive his preliminary examination, to make a false police statement, and to falsely testify against Bowling. For the most part, however, Kulhanek's brief was a reiteration of his very general complaint. And his affidavit was simply a copy of his brief in opposition to the summary disposition motion that had been notarized.

On October 30, 2017, the court held a hearing on Kulhanek's motion to extend time to file a responsive brief. Both Crawford and Melton were present, but Kulhanek had not filed a request to appear by phone or video conference from the prison. Noting that Kulhanek had already filed a responsive brief, the court proceeded to consider Crawford's and Melton's summary disposition request.

Melton described that in the early stages of Kulhanek's criminal proceedings, "it became pretty obvious" that the prosecutor would give one participant a deal if he cooperated. Melton consulted with Kulhanek and then waived his preliminary examination to deny Bowling "a good opportunity to testify against him." Kulhanek then spoke to the police over multiple days. "[T]here was more that came out during this proffer than I even knew about, and then he testified against [Bowling] in both a preliminary examination and the trial." Melton summarized that Kulhanek now alleged that his police statement and testimony against Bowling at the preliminary examination and trial were false, and that the prosecutor and Melton "worked together to facilitate that." However, Melton noted, Kulhanek never said, "on this date I met with Mr. Melton and this is what he told me. This is how he gave me instructions on what to say so I would know what to say on the stand, and then also explain how that even amounts to a cause of action. . . ." This entitled Melton to summary disposition, he contended.

Crawford argued that he "was really on the case for the tail end strictly for the sentencing portion" and that Kulhanek's allegations "really just bl[ew] [his] mind." Crawford opined that Kulhanek was "disgruntled with the sentence he received," but emphasized that Kulhanek had been charged with a capital offense and his sentence "could have been worse." Crawford insisted that he never told Kulhanek to give false testimony and that he truly believed that Kulhanek told the truth on the stand.

The court took the matter under advisement and eventually dismissed Kulhanek's complaint on December 21, 2017, 10 days after this Court denied Kulhanek's delayed

application for leave to appeal in his criminal matter. After outlining the facts, the circuit court noted that the "thrust of" Kulhanek's legal malpractice complaint was that his attorneys, the prosecutor, and the investigating police trooper "conspired against [him] to 'trick' him into falsely testifying against Bowling and to plead guilty to crimes that he did not commit." Kulhanek alleged that his attorneys "forced" him "to give a false recorded statement" to the police, "to take a false polygraph," and "to commit fraud on the court with his testimony and guilty pleas." However, the court noted, Kulhanek responded to his attorneys' summary disposition motion merely by reiterating the claims in his complaint.

The court noted that Kulhanek alleged that he was coerced into pleading guilty and testifying against Bowling; however, Kulhanek "testified under oath in the hearing and at Bowling's trial that he was being voluntary and truthful." The court ruled that Kulhanek failed to state claims of legal malpractice against either Melton or Crawford. Rather, Kulhanek raised claims of intentional conduct, not negligence.

While intentional conduct could form the basis of Kulhanek's fraud claims, those claims failed because Kulhanek did "not specify what material representations [Crawford and Melton] allegedly made to garner [Kulhanek's] false testimony." The court further noted that a plaintiff cannot establish a fraud claim when he had " 'means of knowledge regarding the truthfulness of the representation.' " *Webb v First of Mich Corp*, 195 Mich App 470, 474; 491 NW2d 851 (1992). Kulhanek was "the only one who could have known whether his testimony in the Bowling case and his plea were truthful." Accordingly, the court reasoned, Kulhanek could not reasonably rely on any misrepresentation by his attorneys.

The court further determined that Kulhanek had not shown that his attorneys caused his injury. Crawford did not cause Kulhanek to lose his right to appeal as Kulhanek stated under oath that he received and read the appellate advice of rights form. Kulhanek also indicated under oath that he understood the terms of his plea agreement and understood that his cooperation would lead to a minimum sentence within the guidelines. Kulhanek testified under oath that no one threatened him and that he was not promised anything beyond that placed on the record at his plea hearing. He then described that he acted as the getaway driver and lookout while Bowling broke and entered into the subject home in Chesaning while the elderly residents were inside. Kulhanek never identified which of his many statements were false.

The court further found that Kulhanek's complaint was frivolous, meriting sanction. Kulhanek could have no reasonable basis to believe that his claims were factually supported, the court concluded.

Kulhanek now appeals, again without the representation of counsel.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 243; 704 NW2d 117 (2005). A motion under MCR 2.116(C)(8) "tests the legal sufficiency of the complaint on the basis of the pleadings alone to determine if the opposing party has stated a claim for which relief can be granted." *Begin v Mich Bell Tel*

*Co*, 284 Mich App 581, 591; 773 NW2d 271 (2009). We must accept all well-pleaded allegations as true and construe them in the light most favorable to the nonmoving party. *Id*. The motion should be granted only if no factual development could possibly justify recovery. *Id*.

A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate . . . if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).]

### III. LEGAL MALPRACTICE

To establish a claim of legal malpractice, a plaintiff must show:

(1) the existence of an attorney-client relationship;

(2) negligence in the legal representation of the plaintiff;

(3) that the negligence was a proximate cause of an injury; and

(4) the fact and extent of the injury alleged. [*Charles Reinhart Co v Winiemko*, 444 Mich 579, 585-586; 513 NW2d 773 (1994) (quotation marks and citation omitted).]

As aptly determined by the circuit court in this case, Kulhanek failed to state a claim of legal malpractice upon which relief could be granted because he failed to allege negligence. "[T]his Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *VanVorous v Burmeister*, 262 Mich App 467, 483; 687 NW2d 132 (2004), citing *Smith v Stolberg*, 231 Mich App 256, 258-259; 586 NW2d 103 (1998); *Sudul v Hamtramck*, 221 Mich App 455, 458, 477; 562 NW2d 478 (1997). In *VanVorous*, 262 Mich App at 483, for example, the plaintiff attempted to transform her intentional tort claim into a claim for gross negligence by asserting that the defendants breached their duty of care by employing excessive force.

In *Smith*, 231 Mich App at 257, the plaintiff filed suit against an attorney who represented his daughter-in-law in a custody battle. The plaintiff accused the defendant attorney of pushing him into a bench at a court appearance. *Id*. The plaintiff raised claims of assault and battery and *ordinary* negligence, but later amended his complaint to eliminate the intentional tort claim. *Id*. The plaintiff's negligence claim accused the defendant of breaching his duty " 'not to

engage in disruptive behavior, not to speak to opposing parties in a case in which defendant is engaged as counsel, and not to touch or strike members of the opposite parties' family.' " *Id*. at 258-259. This claim essentially alleged an intentional, offensive touching, however, and not a negligent act. Accordingly, this Court affirmed the trial court's summary dismissal of the plaintiff's ordinary negligence count. *Id*. at 259.

Kulhanek alleged that Melton and Crawford intentionally undertook certain acts that harmed him. Melton allegedly collaborated with the prosecutor and the investigating police trooper to file false charges against Kulhanek, waived Kulhanek's preliminary examination so Kulhanek would not learn that the prosecutor lacked probable cause to charge him, and knowingly advised Kulhanek to give false police statements and to testify falsely against Bowling. Kulhanek asserted in his complaint that Melton exhibited "negligence in failing . . . to have the . . . illegal plea[] withdrawn[]." But this was part and parcel of the course of intentional conduct allegedly undertaken by Melton to force Kulhanek to testify falsely against Bowling. Melton did not allegedly act with mere negligence in failing to seek withdrawal of the plea based on the false statements intentionally coerced by Melton; Melton allegedly acted intentionally in failing to seek withdrawal to cover up his prior intentional conduct. Accordingly, we discern no error in the circuit court's dismissal of Kulhanek's legal malpractice claim against Melton.

As to Crawford, Kulhanek alleged that he was negligent in failing to file a direct appeal and failing to move to withdraw Kulhanek's illegal plea. However, the facts alleged by Kulhanek depict an intentional failure to file a direct appeal. Specifically, Kulhanek alleged that Crawford purposefully failed to file his signed notice of appellate rights and to request appellate counsel on his behalf because Kulhanek's family could not pay Crawford $25,000. Summary disposition was therefore appropriate under MCR 2.116(C)(8).

Dismissal of Kulhanek's claim against Crawford based on his failure to seek withdrawal of his guilty plea was proper under MCR 2.116(C)(10). Kulhanek alleged that he hired Crawford to move to withdraw his plea and to remand to the district court for a preliminary examination. The trial court advised Kulhanek when he fired Melton that withdrawing his plea could lead to dire consequences and that he should first discuss the issue with his new attorney. The court also notified Kulhanek that the only step left in his criminal proceeding was sentencing. Crawford stated in court that he was hired at the end of the case "strictly for the sentencing portion," contradicting Kulhanek's version of events. Kulhanek never presented a retainer agreement to rebut Crawford's description of the services he was retained for and did not swear in an affidavit that Crawford verbally agreed to seek withdrawal of his plea. Accordingly, Kulhanek has not created a triable issue of fact that Crawford committed legal malpractice.

IV. FRAUD

Intentional conduct can be sufficient to support a claim of fraud, however. Kulhanek appears to raise two types of fraud claims: fraud by concealment and fraud by misrepresentation.

Silent fraud, also known as fraudulent concealment, arises from suppression of the truth. *M & D, Inc v McConkey*, 231 Mich App 22, 35-36; 585 NW2d 33 (1998). The term "suppression" implies deliberate action. But fraud may also result from inaction or silence when there is a duty to speak. In a claim for silent fraud, "the suppression of a material fact, which a

party in good faith is duty-bound to disclose, is equivalent to a false representation." *Id*. at 28-29. Our Supreme Court has described silent fraud as a doctrine that has "long been recognized in Michigan," holding that "when there is a legal or equitable duty of disclosure," fraud may arise from "suppression of the truth" with "intent to defraud." *Titan Ins Co v Hyten*, 491 Mich 547, 557; 817 NW2d 562 (2012) (quotation marks and citation omitted).

To establish a claim of fraudulent misrepresentation:

[A] plaintiff must prove that (1) the defendant made a material representation, (2) the representation was false, (3) the defendant knew that it was false when it was made, or made it recklessly, without any knowledge of its truth and as a positive assertion, (4) the defendant made the representation with the intention that the plaintiff would act on it, (5) the plaintiff acted in reliance on it, and (6) the plaintiff suffered injury because of that reliance. [*Zaremba Equipment, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 38-39; 761 NW2d 151 (2008).]

The plaintiff must reasonably rely on the misrepresentation to support a fraud claim. *Id*. at 39. " 'There can be no fraud where a person has the means to determine that a representation is not true.' " *Id*. at 38, quoting *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994).

Pursuant to court rule, fraud must be pleaded "with particularity." MCR 2.112(B)(1). This is a "heightened pleading standard." *State of Michigan ex rel Gurganus v CVS Caremark Corp*, 496 Mich 45, 64; 852 NW2d 103 (2014). "General allegations will not suffice to state a fraud claim." *LaMothe v Auto Club Ins Ass'n*, 214 Mich App 577, 586; 543 NW2d 42 (1995). "Because fraud must be pleaded with particularity and is not to be lightly presumed, but must be clearly proved by clear, satisfactory and convincing evidence, trial courts should ensure that these standards are clearly satisfied with regard to all of the elements of a fraud claim." *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008).

Here, Kulhanek alleged that Melton conspired with the prosecutor and the investigating trooper to coerce or force him to commit fraud on the court, thereby committing fraud indirectly. Kulhanek accused Melton of fraud in conspiring to bring "bogus" criminal charges against him. Kulhanek asserted that Melton convinced him to waive his preliminary examination by telling Kulhanek that he had not been able to reach a settlement with the prosecutor. And Kulhanek accused both Crawford and Melton of fraudulently concealing from the court that they convinced Kulhanek to give false testimony against Bowling.

The only representation cited by Kulhanek was Melton's statement before the preliminary examination that he had not yet "settled the case." This statement was not false when made. Kulhanek was bound over to the circuit court after waiving his preliminary examination on March 21, 2016. The prosecutor and Melton did not reach a plea agreement to place before Kulhanek until May 9.

Kulhanek implies that Melton and Crawford made other representations to convince him to make a false police statement and to testify falsely against Bowling. These allegations are insufficient to meet the particularity requirement of MCR 2.112(B)(1). Kulhanek has never

explained what his attorneys said to convince him. He therefore failed to state an actionable claim in this regard.

Kulhanek alleged that Crawford defrauded him by filing a sentencing memorandum instead of seeking to withdraw his plea and remand to the district court for a preliminary examination. However, the trial court in the criminal action advised Kulhanek that plea withdrawal was not guaranteed and that he needed to discuss the issue with Crawford. Kulhanek has not described any representation made by Crawford on the subject. Kulhanek proceeded to testify against Bowling, implicitly reaffirming his acceptance of the plea agreement. Accordingly, summary disposition of this claim was appropriate under both MCR 2.116(C)(8) and (C)(10).

Kulhanek also accuses Melton and Crawford of fraudulently concealing from the court that he lied under oath. Kulhanek has never identified which of his statements were false. He has not claimed that he and Bowling were not the perpetrators of the subject offenses or that he mischaracterized his role in his police statement or testimony. Kulhanek did not sufficiently describe the information fraudulently concealed and therefore cannot state a claim for relief.

Finally, Kulhanek accused Crawford of fraudulently concealing that he did not file his signed request for appellate counsel within the 42-day deadline. As noted by the trial court in the criminal action, however, the court advised Kulhanek of this deadline on the record and provided Kulhanek with an advice of rights form. Kulhanek could have personally given the signed form to the court that day. Moreover, Crawford denied withholding services and Kulhanek did not rebut that claim with an affidavit from his relatives or a document from Crawford requesting $25,000 in exchange for his services. Summary disposition was therefore supported under MCR 2.116(C)(10).

## V. SANCTIONS FOR FRIVOLOUS COMPLAINT

Kulhanek finally challenges the circuit court's imposition of sanctions against him. We review for clear error a trial court's finding of frivolity. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). "A finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 387; 761 NW2d 353 (2008). This standard is deferential; "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong." *People v Cheatham*, 453 Mich 1, 30 n 23; 551 NW2d 355 (1996).

A party who raises frivolous claims is subject to sanctions, MCR 2.114(E), and can be ordered to pay the other parties' costs in defending against that complaint. MCR 2.114(F). See also MCL 600.2591(1)-(2). A claim is deemed "frivolous" if

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.   [MCL 600.2591(3)(a).]

As a general rule, courts hold complaints filed by in pro per litigants "to less stringent standards than formal pleadings drafted by lawyers." *Haines v Kerner*, 404 US 519, 520; 92 S Ct 594; 30 L Ed 2d 652 (1972).  Even employing this standard, however, we cannot proclaim that the circuit court clearly erred in finding Kulhanek's complaint frivolous.  Despite setbacks in his postconviction motions and delayed application for leave to appeal in his criminal matter, Kulhanek made no attempt to clarify or refine his challenges in his complaint.  Indeed, Kulhanek even responded to the summary disposition motion by merely repeating the claims in his complaint with no greater specificity.  Kulhanek's legal malpractice claim was devoid of arguable legal merit and his repeated general factual averments evidence the Kulhanek had no reasonable basis to believe that he could support his claims with evidence.  Kulhanek is therefore not entitled to relief from the sanctions imposed against him.

We affirm.  Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219(A).

/s/ William B. Murphy
/s/ Elizabeth L. Gleicher
/s/ Anica Letica

-11-