AFSCME LOCAL 25 v WAYNE COUNTY

Docket Nos. 306414 and 306415. Submitted April 11, 2012, at Detroit. Decided August 2, 2012, at 9:00 a.m. Application for leave to appeal dismissed on stipulation, 493 Mich 899.

Locals 25, 101, 409, and 1659 of the American Federation of State, County and Municipal Employees (AFSCME) brought an action in the Wayne Circuit Court alleging that Wayne County and its chief executive officer (CEO) had violated the Wayne County Charter and engaged in improper collective-bargaining practices by unilaterally implementing the terms of its last best offer after negotiations to reach a successor collective-bargaining agreement reached an impasse. The last best offer, which required union employees to accept a 20-percent wage decrease, was issued through the Wayne County labor relations division under the authority of the CEO, and had been neither submitted to nor approved by the Wayne County Commission. Wayne County filed a counterclaim for a declaratory judgment and injunctive relief, and Michigan AFSCME Council 25 successfully moved to intervene as a plaintiff. The court, John A. Murphy, J., granted defendants summary disposition of plaintiffs' claims for lack of jurisdiction and granted partial summary disposition in favor of intervening plaintiff Council 25, ruling that under the Wayne County Charter and ordinances, the rate of compensation for county employees must be approved by the Wayne County Commission. Defendants moved for reconsideration or, alternatively, for a stay of proceedings pending appeal, arguing for the first time that they were immune from suit pursuant to the governmental tort liability act (GTLA), MCL 691.1401 *et seq.* The trial court denied defendants' motion and request for a stay, and defendants appealed this order as of right in Docket No. 306414. The Court of Appeals granted defendants' application for leave to appeal the trial court's opinion and order granting partial summary disposition in favor of intervening plaintiff in Docket No. 306415 and consolidated the cases.

The Court of Appeals *held*:

1. Public employment labor relations are governed by the public employment relations act (PERA), MCL 423.201 *et seq.* Following the expiration of a collective-bargaining agreement, PERA requires that a public employer bargain collectively and in

good faith with respect to wages, hours, and other terms and conditions of employment that are mandatory subjects of bargaining. These subjects survive the expiration of an agreement by operation of law until an impasse in negotiation occurs. Consequently, before an impasse is reached, neither party may take unilateral action with respect to a mandatory subject of bargaining. The primary obligation of the parties when negotiating a collective-bargaining agreement is to meet and confer in good faith by manifesting an attitude and conduct that will be conducive to reaching an agreement. If the parties have negotiated in good faith regarding mandatory subjects of bargaining, their duty under PERA has been met.

2. The authority to unilaterally implement the last best offer when negotiations have reached an impasse is intrinsic to the duty to collectively bargain in good faith and is part of the negotiation process itself. Accordingly, because § 4.323 of the Wayne County Charter required the labor relations division to act for the county under the direction of the CEO in the negotiation and administration of collective-bargaining contracts, commission approval to implement the last best offer was not required.

3. Commission approval to implement the last best offer was not required under Wayne County Ordinance 90-847, § 3, which requires notice, a public hearing, and commission approval before the commission adopts a rule. Although § 7 of the ordinance provides that certain commission actions affecting the compensation of county officers and employees must fully comply with the commission-approval requirements of § 3, § 7 pertains to internal agency procedures and is inapplicable to collective bargaining and negotiations, a matter that § 4.323 of the Wayne County Charter imparted exclusively to the labor relations division under the direction of the CEO. Because Ordinance 90-847 does not apply to the collective-bargaining process, the trial court erred by granting partial summary disposition for Council 25 on that ground, and defendants were entitled to summary disposition in their favor.

4. Once a successor collective-bargaining agreement was reached and before it took effect, the commission had the authority to approve county-employee salaries under MCL 46.11(g), which provides that a county board of commissioners, at a lawfully held meeting, may prescribe and fix the salaries and compensation of county employees if not fixed by law. Given that the parties used the process set forth in this provision when a successor agreement was reached, the commission ultimately had the opportunity to ratify the agreement, which it did before the agreement took effect. The fact that the parties did not employ the procedure

outlined in Ordinance 90-847, § 3 but rather placed the successor agreement on the commission's agenda to ratify confirmed the conclusion that Ordinance 90-847 was inapplicable.

Reversed and remanded for entry of summary disposition in defendants' favor.

M. J. KELLY, P.J., dissenting, would have affirmed, stating that PERA does not limit a local government's authority to regulate its negotiators' use of the last-best-offer tactic and that the Court should defer to Wayne County's policy determination that its public employees should not have their compensation and benefits reduced without the commission's approval. He would have further held that the trial court did not err by determining that the unions' employees were entitled to restitution for the amount of pay and benefits that they had earned under the terms of their interim contract that was unlawfully withheld.

1. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — COLLECTIVE-BARGAINING AGREEMENTS.

Public employment labor relations are governed by the public employment relations act (PERA), MCL 423.201 *et seq.*; following the expiration of a collective-bargaining agreement, PERA requires that a public employer bargain collectively and in good faith with respect to wages, hours, and other terms and conditions of employment that are mandatory subjects of bargaining; the primary obligation of the parties when negotiating a collective-bargaining agreement is to meet and confer in good faith by manifesting an attitude and conduct that will be conducive to reaching an agreement; if the parties have negotiated in good faith regarding mandatory subjects of bargaining, their duty under PERA has been met.

2. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — COLLECTIVE-BARGAINING AGREEMENTS — IMPASSES IN COLLECTIVE BARGAINING — UNILATERAL IMPLEMENTATIONS OF LAST BEST OFFER.

Mandatory subjects of collective bargaining survive the expiration of a collective-bargaining agreement by operation of law until an impasse in negotiation occurs; before an impasse is reached, neither party may take unilateral action with respect to a mandatory subject of bargaining; the authority to unilaterally implement the last best offer when negotiations have reached an impasse is intrinsic to the duty to collectively bargain in good faith and is part of the negotiation process itself.

*Law Office of Eric I. Frankie PLC* (by *Eric I. Frankie*) and *Miller Cohen, P.L.C.* (by *Richard G. Mack, Jr., Ada Verloren,* and *Austin W. Garrett*), for Michigan AFSCME Council 25.

*Bruce A. Campbell,* Assistant Corporation Counsel, and *Clark Hill PLC* (by *Thomas M. J. Hathaway, Jeffrey A. Steele,* and *David A. Hardesty*) for Wayne County and the Wayne County Chief Executive Officer.

Before: M. J. KELLY, P.J., and FITZGERALD and DONOFRIO, JJ.

DONOFRIO, J. Defendants, Wayne County (or the county) and the Wayne County Chief Executive Officer (the CEO), appeal both as of right and by leave granted the trial court's orders granting partial summary disposition in favor of intervening plaintiff, Michigan AFSCME Council 25, on its claim that defendants unlawfully imposed a wage reduction for county employees, and denying defendants' motion for reconsideration regarding the applicability of governmental immunity. Because defendants were not required to obtain approval from the Wayne County Commission before implementing the terms of the "last best offer," we reverse and remand for entry of summary disposition in defendants' favor.

Plaintiffs (four AFSCME local unions) and defendants were parties to a collective-bargaining agreement (CBA). After the CBA expired, the parties unsuccessfully engaged in negotiations to reach a successor agreement. On October 21, 2010, plaintiffs filed this action, alleging that defendants were in violation of the Wayne County charter and had engaged in improper collective-bargaining practices. In a December 1, 2010, letter to plaintiffs, Mark Dukes, director of Wayne

County's labor relations division, declared that negotiations had reached an impasse and indicated that the county would be implementing the terms of its "last best offer" (LBO), which required union employees to accept a 20-percent wage decrease and other concessions. The LBO was issued through the labor relations division, under the authority of the CEO, and was not submitted to or approved by the Wayne County Commission. The county filed a counterclaim for a declaratory judgment and injunctive relief. The trial court granted the motion to intervene of Council 25. Like plaintiffs, Council 25 alleged that the CEO violated Wayne County ordinances by imposing the wage decrease without commission approval.

The trial court granted defendants summary disposition of plaintiffs' claims for lack of jurisdiction[1] and, with respect to intervening plaintiff Council 25, the court granted partial summary disposition in its favor regarding the CEO's failure to obtain commission approval for the wage decrease. The trial court's order invalidated the CEO's imposition of the LBO because it fixed the rates of compensation for county employees without the commission's approval. The court stated that the "matter will proceed on the issue of damages." The court specifically "declare[d] that under the Wayne County Charter and ordinances, to be lawful, any mandate that fixes the rate of compensation for county employees . . . must have the approval of the Wayne County Commission."

Defendants moved for reconsideration or, alternatively, for a stay of proceedings pending appeal, arguing

---

[1] The trial court determined that jurisdiction was proper in the Michigan Employment Relations Commission. That ruling pertained to plaintiffs only, not to intervening plaintiff Council 25, and it is not at issue in this appeal.

for the first time that they were immune from suit pursuant to the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, for violations of a county ordinance. Defendants contended that the trial court therefore erred by granting partial summary disposition in favor of Council 25. The trial court denied defendants' motion and request for a stay. Defendants now appeal in this Court.

"This Court reviews de novo a trial court's grant or denial of a motion for summary disposition." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone." *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). Summary disposition under subrule (C)(8) is appropriate when a claim "is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery." *Id.*

Public employment labor relations are governed by the public employment relations act (PERA), MCL 423.201 *et seq.* The underlying purpose of PERA "is to resolve labor-management strife through collective bargaining." *Detroit Fire Fighters Ass'n, IAFF Local 344 v Detroit*, 482 Mich 18, 28-29; 753 NW2d 579 (2008) (quotation marks and citation omitted). Following the expiration of a CBA, PERA requires that a public employer bargain collectively and in good faith with respect to wages, hours, and other terms and conditions of employment that are "mandatory subjects of bargaining . . . ." *Jackson Community College Classified & Technical Ass'n, MESPA v Jackson Community College*, 187 Mich App 708, 711-712; 468 NW2d 61 (1991) (quotation marks and citation omitted). These subjects "survive the expiration of an agreement by operation of law until

an impasse in negotiation occurs." *Id.* at 712. Consequently, "[b]efore an impasse in the bargaining process is reached, neither party may take unilateral action with respect to a mandatory subject of bargaining . . . ." *Id.*

Section 15 of PERA, MCL 423.215(1), provides:

> A public employer shall bargain collectively with the representatives of its employees as described in [MCL 423.211] and may make and enter into collective bargaining agreements with those representatives. Except as otherwise provided in this section, for the purposes of this section, to bargain collectively is to perform the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or to negotiate an agreement, or any question arising under the agreement, and to execute a written contract, ordinance, or resolution incorporating any agreement reached if requested by either party, but this obligation does not compel either party to agree to a proposal or make a concession.

In construing this provision, our Supreme Court has recognized:

> The primary obligation placed upon the parties in a collective bargaining setting is to meet and confer in good faith. . . . The law does not mandate that the parties ultimately reach agreement, nor does it dictate the substance of the terms on which the parties must bargain. In essence the requirements of good faith bargaining is [sic] simply that the parties manifest . . . an attitude and conduct that will be conducive to reaching an agreement. [*Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 53-54; 214 NW2d 803 (1974).]

If the parties have negotiated in good faith regarding mandatory subjects of bargaining, their statutory duty under PERA has been met. *Id.* at 55.

Intrinsic to the duty to collectively bargain in good faith is the authority to unilaterally implement an LBO when negotiations have reached an impasse. The parties here do not dispute this authority, which is a product of the evolution of the common law as it pertains to collective bargaining.[2] See *Detroit Police Officers Ass'n*, 391 Mich at 56; *AFSCME Council 25 v Wayne Co*, 152 Mich App 87, 93-94, 97; 393 NW2d 889 (1986). Council 25 argues, however, that because the LBO in this case affected wages and benefits, commission approval was required before the terms of the LBO could be implemented. This argument contravenes the notion that the authority to implement an LBO when an impasse is reached *is part of the negotiation process itself*. The United States Supreme Court has recognized that "impasse and an accompanying implementation of proposals constitute an integral part of the bargaining process." *Brown v Pro Football, Inc*, 518 US 231, 239; 116 S Ct 2116; 135 L Ed 2d 521 (1996). Similarly, the authority to unilaterally implement the terms of an LBO following impasse has been characterized as a "bargaining 'tactic[]'. . . utilized in the collective bargaining process." *Brown v Pro Football, Inc*, 50 F3d 1041, 1054 (DC Cir, 1995), aff'd 518 US 231 (1996). Thus, the implementation of an LBO is a continuation of the collective-bargaining process and inherent to the statutory obligation to negotiate in good faith to reach a CBA. Because the authority to implement the LBO was integral to the negotiation process, and § 4.323(b) of the Wayne County Charter required the labor relations division to "act for the County under the direction of the CEO in the negotiation and

---

[2] With the exception of MCL 423.207a(4), which applies to public school employers, there is no statutory authority granting public employers the right to take unilateral action following a collective-bargaining impasse.

administration of collective bargaining contracts," commission approval was not required before the LBO could be implemented.

In support of its argument that commission approval was required, Council 25 relies on, and the trial court found dispositive, Wayne County Ordinance 90-847,[3] pertaining to the rulemaking authority of county agencies. "The rules of statutory construction apply to ordinances . . . ." *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 244; 704 NW2d 117 (2005). "When interpreting statutory language, the primary goal is to discern and give effect to the legislative intent that may reasonably be inferred from the language of the statute." *Id.* at 243. When language is unambiguous, courts must apply the provision as written. *Id.* We accord words used in a provision their common and ordinary meanings and "must 'give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory.' " *Id.* at 244, quoting *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

Ordinance 90-847, § 3(a) provides:

> Subject to county commission approval as hereinafter provided, each county agency shall formulate and promulgate rules to prescribe the organization, procedures and methods by which it serves the public or regulates any public or private activity, process, facility, operation or agency. These rules shall also specify where, when and how a person may obtain information from or submit requests to the agency for service, advice and other assistance.

Ordinance 90-847, § 2, defines "rule" as follows:

---

[3] The provisions contained in Ordinance 90-847 are also found in Chapter 5 of the Wayne County Code of Ordinances.

*Rule* means a directive, statement, standard, policy, regulation, proclamation, ruling, determination, order, instruction or interpretation, which is of general effect and future application, which applies, implements or makes more specific those express laws enforced, implemented or administered by an officer or agency, or which prescribes the organization, procedure or practice of that office or agency, including the amendment, suspension or rescission thereof.

Ordinance 90-847, § 3, sets forth requirements that must be met before an agency adopts a rule, including:

(f) Before adopting a rule, an agency shall give notice of a public hearing and offer any person a reasonable opportunity to present data, views and arguments pertaining to it. Unless otherwise provided by law, the notice shall be given at least ten days before the hearing and at least 20 days before adoption of the rule. The notice shall include all of the following:

(1) An exact reference to the statutory, charter or ordinance authority under which the rule is made.

(2) A concise summary of the key terms of the rule, and its proposed effective date.

(3) The time and place of the public hearing, and how, where and when data and viewpoints may be submitted to the agency other than at the hearing.

(g) Before setting a public hearing on a proposed rule, agencies subject to supervision of the chief executive officer shall also obtain his or her approval. All county agencies shall provide a copy of a proposed rule to the corporation counsel, who shall rule on the legality and liability potential of the proposed rule. The legislative research bureau shall advise the agency as to matters of form, citation, classification, arrangement, numbering, cross-reference, textual clarity and the need or not for county commission approval.

(h) Each agency shall keep a mailing list of persons who ask notice of proposed rules. A renewal card shall be sent to

each person each January to update and purge the list. Notice shall be mailed first class to all listed persons as to each pertinent public hearing.

(i) The agency shall publish the notice of public hearing as required by law or ordinance, and if none, then in a manner best calculated to give notice to those persons likely to be affected by the proposed rule, such as: a newspaper of general circulation, or a trade journal, or neighborhood newsletters, depending on circumstances.

* * *

(k) An agency shall submit the proposed rule, revised when appropriate due to the public hearing, to the county commission by delivering six copies to the clerk thereof. The chairman shall refer the proposed rule to the most appropriate standing committee or committees for prompt consideration. The clerk shall retain one copy for commission files, and post one copy on a common bulletin board to which other commissioners may refer. The proposed rule shall be considered by the committee to which transmitted within 15 days. If approved by all committee members, it shall be deemed approved by the commission, and so certified by the clerk to the issuing agency. If not approved, the proposed rule shall be forwarded to and scheduled for full board action within 30 days of receipt. If not rejected within 30 days of receipt, a rule is effective.

* * *

(o) A rule shall not be valid and enforceable unless processed in substantial compliance with the notice requirements of this chapter. Failure, however, to give a person notice of a proposed rule shall not invalidate the rule if those persons who are in fact notified are reasonably representative of the interests and viewpoints of the classes affected by the rule.

Ordinance 90-847, § 6, exempts certain rules from the requirements of notice and commission approval, including "[a] determination, decision, order or opinion in

a case," "[a] declaratory ruling or opinion as applied to a fixed and stated set of facts," and "[a]n individual decision by an agency to exercise or not to exercise a legal power, although private rights and interests are affected by that decision." The exemptions in § 6, however, are subject to Ordinance 90-847, § 7, which provides, in pertinent part:

> A memorandum, directive, order or determination *which governs the internal management, organization or procedures of an agency,* but which also addresses or substantially impacts upon the following matters, shall not be valid and of effect unless in full compliance with the commission approval requirements of this chapter:
>
> (1) Fix the rate of compensation for county officers and employees, including fringe benefits, per diem rates and lump sum payments in lieu of reimbursed expenses, where these rates are not otherwise fixed by contract or law. [Emphasis added.]

Council 25 principally relies on Ordinance 90-847, § 7, and contends that commission approval before implementation of the LBO was required because the LBO affected county employees' rates of compensation and benefits. The plain language of § 7, however, pertains to "the internal management, organization or procedures of an agency[.]" Moreover, as is readily apparent from the other quoted provisions of Ordinance 90-847, the ordinance involves agency rulemaking and is wholly inapplicable to collective bargaining and negotiations, a matter that § 4.323 of the Wayne County Charter imparted to the labor relations division, under the direction of the CEO. Because Ordinance 90-847 does not apply to the collective-bargaining process, the trial court erred by relying on the ordinance and granting partial summary disposition for Council 25. As previously discussed, the labor relations division, under the CEO's direction, was authorized to implement the

LBO as part of the negotiation process in an effort to reach a successor CBA. Accordingly, defendants were entitled to summary disposition in their favor.

Further, we note that MCL 46.11(g) empowered the commission to approve county employee salaries once a successor CBA was reached. That provision states:

> A county board of commissioners, at a lawfully held meeting, may do 1 or more of the following:
>
> * * *
>
> (g) Prescribe and fix the salaries and compensation of employees of the county if not fixed by law . . . .

Under this provision, once negotiations resulted in a successor CBA, the commission had the authority to approve employee salaries before the new CBA took effect. The parties indicated at oral argument that this process is the one that was actually used when plaintiffs and defendants reached a successor CBA at year's end 2011. Thus, the commission ultimately had the opportunity to ratify the successor CBA, including approving employee salaries, and did so before the CBA took effect. Notably, the procedure outlined in Ordinance 90-847, § 3, was not employed when the parties reached a successor CBA. Rather, the CBA was placed on the commission's agenda and simply ratified. The process that was used confirms our conclusion that Ordinance 90-847 is inapplicable in these circumstances. Moreover, application of the ordinance in these circumstances would conflict with the Wayne County Charter because it would infringe on the exclusive authority conferred on the executive to negotiate CBAs. See Wayne County Charter, § 4.323. To accept the interpretation of Council 25 would require the legislative branch, the commission, to intrude into the negotiation

process, exclusively granted to the executive, rather than to perform its overseeing function in ratifying or rejecting the CBA upon its submission.

Having determined that the trial court erred by denying summary disposition for defendants, we need not address defendants' argument that governmental immunity precluded plaintiffs from proceeding on the issue of damages.

Reversed and remanded for entry of summary disposition in defendants' favor. Defendants, being the prevailing parties, may tax costs pursuant to MCR 7.219. We do not retain jurisdiction.

FITZGERALD, J., concurred with DONOFRIO, J.

M. J. KELLY, P.J. (*dissenting*). After examining the relevant provisions of the public employment relations act, MCL 423.201 *et seq.*, I conclude that the act cannot be read to include a codification of the negotiating tactic referred to as the last-best-offer rule. It also cannot be read to limit a local government's authority to regulate its negotiator's use of the last-best-offer tactic. Instead, whether and to what extent a negotiator may employ the last-best-offer tactic is—unless used in bad faith—a matter of local concern that may be governed by local law. Under local law, defendant Wayne County's Chief Executive Officer (the Executive) had the authority to negotiate collective-bargaining agreements with plaintiffs—four locals and Council 25 of the American Federation of State, County and Municipal Employees (collectively the Unions)—which necessarily included the authority to use the last-best-offer tactic. But local law also limits that authority: the Executive may not use the tactic if it would result in lower benefits for the employees without first obtaining approval from defen-

dant Wayne County—specifically the Wayne County Commission (the Commission). Because the Executive did not obtain the Commission's approval before using the last-best-offer tactic to reduce the employees' benefits, the trial court correctly determined that those terms were unlawful and invalid. Further, I reject defendants' contention that they cannot be compelled to restore the unlawfully withheld pay and benefits because they have governmental immunity. Because I would affirm the trial court on these bases, I must respectfully dissent.

## I. MOTION FOR SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition as well as the proper interpretation and application of statutes. *Chen v Wayne State Univ*, 284 Mich App 172, 191, 200; 771 NW2d 820 (2009).

### B. OBLIGATION TO BARGAIN IN GOOD FAITH

The majority argues that the use of the last-best-offer tactic is integral to the bargaining process and "inherent to the statutory obligation to negotiate in good faith . . . ." *Ante* at 496. The majority asserts that, because "the authority to implement the [last best offer] was integral to the negotiation process, . . . commission approval was not required before the [offer] could be implemented." *Ante* at 496-497. Although its analysis is not entirely clear, the majority has apparently interpreted the statutory duty to bargain in good faith as an inherent limitation on the authority of local governments to regulate their own conduct during negotiations. To the extent that the majority's opinion can be read to stand for that proposition, it has no basis

in the statutory language and, therefore, amounts to a judicially created rule that usurps the power of local governments to regulate their own conduct.

The public employment relations act provides, in relevant part, that a "public employer shall bargain collectively with the representatives of its employees . . . ." MCL 423.215(1). Further, the duty to bargain collectively is a "mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment . . . ." *Id.* However, the obligation to bargain in good faith "does not compel either party to agree to a proposal or make a concession." *Id.* Notably, this statute does not delineate the types of tactics that may be used during negotiations—it merely mandates that the bargaining be in good faith, whatever the tactics. See *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 54; 214 NW2d 803 (1974) (stating that the essential requirement of good-faith bargaining is simply that the parties manifest an attitude and conduct that are conducive to reaching an agreement). Similarly, the statute imposes the obligation to bargain in good faith on the "public employer," but does not propose to identify or limit the authority of local governments to select individuals or entities to bargain on their behalf and does not require local governments to give unfettered authority to their representatives to use whatever tactics the representative might wish to use, as long as those tactics are consistent with good-faith bargaining. The statute is quite limited in application and accordingly cannot be understood to deprive local governments of the ability to specify whether, when, or how specific bargaining tactics may be used. See *Local 1277, Metro Council No 23, AFSCME v City of Center Line*, 414 Mich 642, 651; 327 NW2d 822 (1982) (stating that

the statute is procedural in nature and requires the parties to " 'confer in good faith with an open mind and a sincere desire to reach an agreement' ") (citation omitted).

Our Supreme Court has recognized that after the parties to a good-faith bargain reach an impasse, a public employer may take unilateral action on a disputed issue if that action "is consistent with the terms of its final offer to the union." *Detroit Police Officers Ass'n*, 391 Mich at 56. And it has been held that the use of the last-best-offer tactic after an impasse is a part of the negotiating process. *Brown v Pro Football, Inc*, 518 US 231, 239; 116 S Ct 2116; 135 L Ed 2d 521 (1996). It is, therefore, permissible to use this tactic. See *Detroit Police Officers Ass'n*, 391 Mich at 63. But the Legislature did not *require* the use of this tactic. Stated another way, a public employer does not necessarily breach its duty to negotiate in good faith simply because it uses the last-best-offer tactic. Similarly, a public employer may legitimately conclude that it is not in its own best interest to use this tactic and, in lieu of its use, continue to operate under an expired bargaining agreement without breaching its duty to negotiate in good faith. Consequently, MCL 423.215(1) does not prevent a local government from directly or indirectly limiting its own negotiator's use of the last-best-offer tactic, and the majority errs to the extent that it concludes otherwise.

### C. LOCAL LAW AND THE LAST-BEST-OFFER TACTIC

The majority also argues that Wayne County's local laws do not require the Executive to obtain the Commission's approval before using the last-best-offer tactic, even when the use of that tactic reduces the public employees' wages. I cannot agree.

.

Wayne County's charter establishes a personnel department with a labor relations division. See Wayne County Charter, §§ 4.321 and 4.323. The charter also provides that the labor relations division has the responsibility to "act for the County under the direction of the [Executive] in the negotiation and administration of collective bargaining contracts." Id. at § 4.323(b). Thus, under the charter, the Executive has the general authority to direct the negotiations conducted by the labor relations division. Nevertheless, the Executive's power to direct the labor relations division is not unlimited; the Executive is empowered to "[s]upervise, coordinate, direct, and control all county facilities, operations, and functions *except as otherwise provided by law or this Charter*[.]" *Id.* at § 4.112(a)(1) (emphasis added). Accordingly, the Executive's authority to direct the labor relations division does not include the authority to direct the labor relations division to violate Wayne County's ordinances or charter. As a result, the relevant question is whether Wayne County's ordinances require the Executive—acting through the labor relations division—to obtain approval before implementing the last-best-offer tactic.

Wayne County's charter provides that the Commission is the county's legislative body, *id.* at § 3.111, and that the Commission must exercise its powers by ordinance or resolution, *id.* at § 3.115. The charter also grants the Commission the power to approve all contracts made by the county. *Id.* at § 3.115(3). And the Commission has expressly reserved that right by ordinance with respect to collective-bargaining agreements. Wayne County Code, § 120-121(c).[1] However, the use of the last-best-offer tactic does not result in the creation

_____

[1] I shall refer to the ordinances using their codification in the Wayne County Code of Ordinances rather than the numbers assigned at their

of a collective-bargaining agreement because it does not amount to a meeting of the minds. See *Port Huron Ed Ass'n MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 326-327; 550 NW2d 228 (1996) (noting that there must be a meeting of the minds in order to form a contract and stating that a collective-bargaining agreement, like any other contract, is the product of mutual assent); but see *McNealy v Caterpillar, Inc*, 139 F3d 1113, 1121-1122 (CA 7, 1998) (stating that unilateral implementation of the last-best-offer tactic amounts to an offer for an interim agreement, which can be accepted by the workers returning to work during the period of continuing negotiations). Hence, the provisions applicable to completed contracts do not compel the Executive to seek the Commission's approval before using the last-best-offer tactic.

Nevertheless, the Unions argued that the Wayne County ordinances governing its agencies' rulemaking authority plainly apply to the Executive's use of the last-best-offer tactic. See Wayne County Code, Ch 5. The trial court agreed and determined that § 5-6(1) of the Code applied to the Executive's use of the last-best-offer tactic. For that reason, it concluded that the Executive had to obtain the Commission's approval before its use could become "valid and of effect."

The majority, in contrast, concludes that § 5-6 does not apply to the use of the last-best-offer tactic. Although the majority quotes the relevant ordinances, it offers very little interpretive analysis; rather, it summarily concludes that, given the overall provisions of the ordinances governing administrative procedures, "the ordinance involves agency rulemaking and is

---

adoption. The chief ordinance at issue in this case, which the majority and the parties refer to as 90-847, was codified at §§ 5-1 through 5-6 of the Wayne County Code (the Code).

wholly inapplicable to collective bargaining and nego-
tiations . . . ." *Ante* at 500. I cannot agree with this
unsupported assertion.

Section 5-6 provides that a "memorandum, directive,
order or determination which governs the internal
management, organization or procedures of an agency,
but which also addresses or substantially impacts
upon" certain matters "shall not be valid and of effect
unless" it complies with the commission approval re-
quirements stated under chapter 5 of the Wayne County
Code. One such matter involves any memorandum,
order or determination that fixes the "rate of compen-
sation for county officers and employees, including
fringe benefits . . . ." Wayne County Code, § 5-6(1). This
ordinance represents a clear policy choice by the local
legislature: the Wayne County Commission determined
that it is in the best interests of the county to maintain
the status quo on the pay and benefits for county
employees unless the change is directly approved by the
Commission.

Section 5-6 is codified under chapter 5 of the Wayne
County Code, which deals generally with administrative
rulemaking procedures. This chapter governs the pro-
cedures with which an agency must comply in order to
validly promulgate "rules" or make "rulings." See
Wayne County Code, § 5-2. Section 5-5 provides that
certain "rules or rulings" are exempt "from the notice,
processing and commission approval requirements"
stated under chapter 5, but subject to the exceptions
stated under "section 5-6." *Id.* That is, § 5-5 establishes
an *exception* to the *exemptions* it provides by reference
to § 5-6, but it does not necessarily follow that § 5-6 only
applies to rules or rulings. It is noteworthy that the
Commission did not refer to the term "rule" within
§ 5-6. Section 5-1 defines "rule" as

a directive, statement, standard, policy, regulation, procla-
mation, ruling, determination, order, instruction or inter-
pretation, which is of general effect and future application,
which applies, implements or makes more specific those
express laws enforced, implemented or administered by an
officer or agency, or which prescribes the organization,
procedure or practice of that office or agency, including the
amendment, suspension or rescission thereof.

In contrast, § 5-6—on its face—applies generally to
all "memoranda, directive[s], orders or determinations"
that govern the internal management of an agency. The
Commission's decision to refer to these specific catego-
ries rather than using the defined terms "rule" or
"ruling" must be understood to have been deliberate
and must be given effect. See *Baker v Gen Motors Corp*,
409 Mich 639, 665; 297 NW2d 387 (1980) ("Every word
of a statute should be given meaning and no word
should be treated as surplusage or rendered nugatory if
at all possible."). That is, § 5-6 must be understood to
apply to all memoranda, directives, orders or determi-
nations without regard to whether those memoranda,
directives, orders or determinations are also rules or
rulings under § 5-1. Hence, I cannot agree with the
majority's conclusion that this ordinance does not apply
because it only " 'governs the internal management,
organization or procedures of an agency . . . .' " *Ante* at
500 (emphasis omitted).

Fixing the rate of compensation and benefits for
governmental employees implicates the internal man-
agement of an agency. Accordingly, the Executive's use
of the last-best-offer tactic is a directive or order that
governs the internal management of an agency and
which—however temporarily—fixes the compensation
and benefits for county employees. Consequently, be-
fore the Executive could impose the last-best-offer
terms on the Unions' employees, it had to obtain the

Commission's approval as provided under § 5-6, which it did not do. For that reason, the Executive's decision to unilaterally lower the county's employees' pay and benefits was void.

## II. GOVERNMENTAL IMMUNITY

In their motion for reconsideration of the trial court's order granting summary disposition in favor of the Unions, Wayne County and the Executive argued for the first time that the Unions' claims were barred by governmental immunity. They maintained that the Unions could not seek damages for the pay and benefits that might have been unlawfully withheld because the Unions' claims did not sound in contract and the Unions otherwise failed to plead in avoidance of governmental immunity. Wayne County and the Executive failed to raise this issue in a properly supported motion for summary disposition. As a result, they were not—at that point—entitled to any relief. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 370; 775 NW2d 618 (2009) (stating that a moving party must make a properly supported motion for summary disposition before the opposing party has any obligation to even respond and, if not properly made, the trial court should not grant relief). And this Court will generally not fault a trial court for refusing to consider a defense that a party raised for the first time in a motion for reconsideration. *Pierron v Pierron*, 282 Mich App 222, 264; 765 NW2d 345 (2009). Nevertheless, even considering this issue on its merits, I do not agree that governmental immunity applies.

In this case, the Unions sued to invalidate the Executive's unilateral decision to alter the terms of employment for the Unions' members. Although the claims alleged that the Executive's decision was unlaw-

ful under an ordinance, the Unions did not premise their request for relief on that ordinance or any tort theory. Rather, the Unions initially asked the trial court to make their members "whole" and in a later complaint asked for any relief that the trial court might conclude was warranted. Because the Executive unlawfully reduced the members' pay and benefits, that reduction was void. Accordingly, the employees were entitled to have the pay and benefits that were unlawfully withheld restored to them—that is, they were entitled to the pay and benefits that they had actually earned for their labors under the interim contractual agreement either until the Commission approved the Executive's change in the benefits and pay or until the parties entered into a new collective-bargaining agreement, whichever came first. Thus, although the Executive's use of the last-best-offer tactic to unlawfully reduce the members' pay and benefits was void under an ordinance, the damages arise from Wayne County's *contractual* obligation to pay its employees under the interim agreement pending a lawful change in the pay and benefits. Because the damages arise from this contractual obligation, Wayne County is not immune from liability. See *Koenig v South Haven*, 460 Mich 667, 675; 597 NW2d 99 (1999).

### III. CONCLUSION

The public employment relations act does not limit a local government's authority to regulate its negotiators' use of the last-best-offer tactic. Wayne County has, as a matter of public policy, determined that its public employees should not have their compensation and benefits reduced without the Commission's approval. The trial court respected that policy choice when it determined that the Executive had exceeded the scope

of his authority by cutting the public employees' compensation and benefits without first obtaining approval from the Commission. This Court should respect that policy as well. Finally, the trial court did not err when it determined that the Unions' employees were entitled to restitution for the amount of pay and benefits they had earned under the terms of their interim contract that the Executive unlawfully withheld.

I would affirm.