# STATE OF MICHIGAN

# COURT OF APPEALS

---

WAYNE COUNTY,

          Respondent-Appellee,

v

MICHIGAN AFSCME COUNCIL 25, AFL-CIO,

          Charging Party-Appellant.

UNPUBLISHED
January 24, 2017

No.  327727
MERC
LC No.  10-000060

---

WAYNE COUNTY,

          Respondent-Appellant,

v

MICHIGAN AFSCME COUNCIL 25, AFL-CIO

          Charging Party-Appellee.

No.  327782
MERC
LC No.  10-000060

---

Before:  GADOLA, P.J., and FORT HOOD and RIORDAN, JJ

PER CURIAM.

In Docket No. 327727, Charging Party Michigan AFSCME Council 25, AFL-CIO (AFSCME) appeals by petition to review the decision and order of the MERC that reversed in part and affirmed in part the decision and recommended order of the Administrative Law Judge (ALJ). Respondent Wayne County cross-appeals by petition to review the same order in Docket 327782. We affirm in both Docket No. 327727 and Docket No. 327782.

In *Calhoun Intermediate Sch Dist v Calhoun Intermediate Ed Ass'n*, 314 Mich App 41, 46; 885 NW2d 310 (2016), this Court recently set forth the applicable standard for reviewing decisions from the MERC:

> "We review MERC decisions pursuant to Const 1963, art 6, § 28, and MCL 423.216(e)." *Van Buren Co Ed Ass'n v Decatur Pub Sch*, 309 Mich App 630, 639; 872 NW2d 710 (2015) (quotation marks and citation omitted). MERC's factual findings are "conclusive if they are supported by competent,

-1-

material, and substantial evidence on the record considered as a whole." *Police Officers Ass'n of Mich v Fraternal Order of Police, Montcalm Co Lodge No 149*, 235 Mich App 580, 586; 599 NW2d 504 (1999) (quotation marks and citation omitted). "MERC's legal determinations may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law." *Van Buren Co Ed Ass'n*, 309 Mich App at 639. We review de novo MERC's legal rulings. *St Clair Co Ed Ass'n v St Clair Co Intermediate Sch Dist*, 245 Mich App 498, 513; 630 NW2d 909 (2001).

The Michigan Supreme Court has also urged Michigan courts to "acknowledge[ ] the expertise and judgment possessed by the MERC in the labor relations arena[,]" and to particularly defer to the MERC's factual findings. *St Clair Intermediate School Dist v Intermediate Ed Ass'n/Mich Ed Ass'n*, 458 Mich 540, 553; 581 NW2d 707 (1998). The MERC has been entrusted with the interpretation and enforcement of the Public Employment Relations Act (PERA), MCL 423.201 *et seq.*, an area of the law which has been described as very specialized and "politically sensitive[.]" *Van Buren Co Ed Ass'n*, 309 Mich App at 638, quoting *Kent Co Deputy Sheriffs' Ass'n v Kent Co Sheriff*, 238 Mich App 310, 313; 605 NW2d 363 (1999), aff'd 463 Mich 353 (2000).

To the extent that the instant appeals require this Court to review the MERC's interpretation of the contractual language of the applicable collective-bargaining agreement (CBA), this Court will review this legal question de novo. *Arbuckle v Gen Motors LLC*, 499 Mich 521, 531; 885 NW2d 232 (2016); *AFSCME Council 25 v Faust Pub Library*, 311 Mich App 449, 462; 875 NW2d 254 (2015). This Court will review a CBA in accordance with the ordinary principles of contract law, provided those principles are not inconsistent with federal labor policy. *Arbuckle*, 499 Mich at 532.

On appeal in Docket No. 327727, charging party contends that the MERC erred in dismissing the unfair labor practice charge against respondent with regard to the lieutenants and sergeants and supervisory bargaining units. We disagree.

In *Macomb Co v AFSCME Council 25*, 494 Mich 65, 70; 833 NW2d 225 (2013), quoting *Port Huron Ed Ass'n, MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 321; 550 NW2d 228 (1996), the Michigan Supreme Court stated that where a CBA between the parties covers the matters in dispute, and the CBA contains grievance procedures, "'the details and enforceability of the [contract] provision [at issue] are left to arbitration.'" In *Macomb Co*, 499 Mich at 80, the Michigan Supreme Court set forth a very clear process to be followed when a party alleges an unfair labor practice arising from the failure to bargain collectively over a mandatory subject of bargaining.

> The MERC ordinarily "does not involve itself with contract interpretation when the agreement provides a grievance process that culminates in arbitration." However, when a charging party claims that a respondent has failed to bargain over a mandatory subject of bargaining, the MERC must "determine whether the agreement 'covers' the dispute." As a result, "it is often necessary for the MERC . . . to review the terms of an agreement to ascertain whether a party has breached its statutory duty to bargain." If the agreement covers "the term or condition in

dispute," then "the details and enforceability of the provision are left to arbitration." *The MERC itself has recognized this limitation on its scope of authority, which we reaffirm today: when the parties have agreed to a separate grievance or arbitration process, the MERC's review of a collective bargaining agreement in the context of a refusal-to-bargain claim is limited to determining whether the agreement covers the subject of the claim.* [*Id.* at 80-81, quoting *Port Huron Ed Ass'n*, 452 Mich at 321 (footnotes omitted; emphasis added).]

In other words, the Michigan Supreme Court emphasized that the grievance process that is set forth in the parties' CBA will be the process that will guide the parties' disputes over matters of contract interpretation. *Id.* The parties, where they include language in the CBA that recites their resolution of a particular subject, have therefore satisfied their duty to bargain. *Id.* at 79. The MERC in this case also noted in its decision and order that this was the governing law.

In *Macomb Co*, the charging party unions claimed that it was an unfair labor practice for the respondent employer to alter the actuarial tables that it used for determining retirement benefits. *Id.* at 74. At issue in the case was whether the respondents were obligated to bargain with the charging parties before changing the actuarial tables employed. *Id.* at 82. *Macomb Co* has similar facts to the instant case, where the respondent in that case contended that its retirement ordinance gave it the discretion to alter the actuarial tables, and that it satisfied the duty to bargain with the charging parties where the collective bargaining agreements incorporated the terms of the applicable ordinance. *Id.* at 82-83. The Michigan Supreme Court recognized that the applicable county ordinance did give the respondent discretion to adopt and maintain actuarial calculations, and that eight of the nine collective bargaining units at issue in that case expressly incorporated the terms of the retirement ordinance on the subject of calculating retirement benefits, and the remaining agreement did so implicitly. *Id.* at 83-87. Under such circumstances, the Michigan Supreme Court stated, in pertinent part, as follows:

> Because the collective bargaining agreements cover the calculation of retirement benefits, we conclude that the grievance procedure is the appropriate avenue for the charging parties' claims arising out of the parties' rights under their respective collective bargaining agreements. [*Id.* at 87.]

The instant appeals present similar facts to *Macomb Co*, as the CBA language here expressly references the retirement ordinance, and therefore the maintenance and disbursement of funds earmarked for the thirteenth check. Accordingly, under the authority of *Macomb Co*, the MERC correctly concluded that this matter was best resolved according to the grievance procedures in the CBA, and dismissed charging party's charge of an unfair labor practice on that basis. While a distinguishing fact here is that respondent amended the ordinance at issue, something that Macomb County did not do in the *Macomb Co* case, this fact in and of itself does not render the clear legal principles set forth in *Macomb Co* inapplicable to the instant appeal. Additionally, while charging party argues that *Macomb Co* is not applicable, given that a contract repudiation argument was not made in that case, the Michigan Supreme Court has rendered a clear pronouncement concerning the procedure to be followed when the CBA covers the issue of interpretation to be decided, and it is governing precedent in these appeals.

While the MERC correctly concluded that the grievance process is the appropriate forum for the resolution of the dispute regarding the lieutenants and sergeants and supervisory bargaining units, we will briefly address the merits of charging party's contention that respondent repudiated the terms of the CBA by amending the retirement ordinance. The governing provision of PERA, MCL 423.210(1)(e) provides, in pertinent part, as follows:

> A public employer or an officer or agent of a public employer shall not do any of the following:
>
> (e) Refuse to bargain collectively with the representatives of its public employees, subject to [MCL 423.211]. [Footnote omitted.]

The duty to bargain collectively regarding mandatory subjects of collective bargaining will remain during the life of the collective bargaining agreement. *Macomb Co*, 494 Mich at 79. Once a matter has been determined to be a mandatory subject of bargaining, neither one of the parties is permitted to take unilateral action regarding the matter unless an impasse in negotiations has arisen. *Michigan State AFL-CIO v MERC*, 212 Mich App 472, 486; 538 NW2d 433 (1995); *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 54-55; 214 NW2d 803 (1974). If a party does unilaterally modify the terms of a CBA during the term of the CBA, this will amount to an unfair labor practice. *St Clair Intermediate Sch Dist*, 458 Mich at 564-566 (recognizing that such action will amount to an unfair labor practice under the National Labor Relations Act (NLRA), an analogous statute to Michigan's PERA); *Wayne Co Gov't Bar Ass'n v Co of Wayne*, 169 Mich App 480, 486; 426 NW2d 750 (1988).

> Repudiation of a contract will be held to exist under the following circumstances:
>
> Repudiation exists only when both of the following occur: (1) the contract breach is substantial and has a significant impact on the bargaining unit; and (2) *no bona fide dispute over interpretation of the contract is involved.* [*In re City of Detroit (Police Dep't)*, 26 Mich Pub Emp Rep 21 (2012) (Case No. C10 F-132) (Citations omitted; emphasis added).]

Repudiation that warrants the involvement of MERC will only arise where "there has been a substantial abandonment of the collective bargaining agreement or the bargaining relationship." *Id*. (citations omitted). "The MERC does not exercise jurisdiction of breach of contract claims unless the asserted breach of contract constitutes a complete renunciation of the collective bargaining relationship." *Bay City Sch Dist v Bay City Ed Ass'n Inc*, 425 Mich 426, 437 n 12; 390 NW2d 159 (1986).

On appeal, the thrust of charging party's arguments concerning the alleged repudiation of the CBA are essentially two-fold. First, charging party contends that the MERC erred as a matter of law where it concluded, in a cursory fashion, that the parties had a bona fide dispute concerning the terms of the CBA. In a related assertion, charging party states that respondent did not point to a specific provision in the CBA that gave it authority to modify the CBA.

As an initial matter, a review of the MERC's decision and order belies these arguments. For example, the MERC recited in detail each party's position in the lower tribunal on the issue

of repudiation. Therefore, the MERC, after carefully considering both parties' arguments, did correctly observe that respondent did advance a legal argument supporting its decision to amend the retirement ordinance, and the text of the MERC's decision and order does not support charging party's assertion that the MERC relied on "conclusory assertion[s]."

Charging party also maintains that the relevant language of the CBA clearly prevented respondent from altering the terms of the CBA during the term of the agreement, and that any reference to the retirement ordinance referred only to the ordinance as enacted as of the date of the execution of the CBA. The relevant CBA language provides, in pertinent part, as follows:[1]

> The detailed provisions of the Wayne County Retirement System shall control except where changed or amended below.
>
> * * *
>
> Employees of the Hybrid Retirement Plan shall be eligible for post-retirement cost-of-living adjustments in the form of distributions from the reserve for Inflation Equity.

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 374; 838 NW2d 720 (2013), quoting *Shay v Aldrich*, 487 Mich 648, 660; 790 NW2d 629 (2010).

> "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001). . . . [W]e examine "the language of the contract according to its plain and ordinary meaning." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written . . . ." *In re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). [*Innovation Ventures v Liquid Mf'g*, 499 Mich 491, 507; 885 NW2d 861 (2016).]

The MERC's conclusion that respondent had not repudiated the terms of the CBA was not legally erroneous, given that the applicable language of the CBA was reasonably subject to different interpretations. In other words, the MERC did not commit an error of law in concluding that where a bona fide dispute existed concerning the applicable CBA language, respondent's action in amending the retirement ordinance did not amount to a repudiation of the contract, and therefore an unfair labor practice. While the CBA expressly stated that the terms of the retirement ordinance would control on matters of retirement, except where modified elsewhere in the CBA, there is nothing in the CBA language that expressly stated that only the terms of the ordinance in effect at the time of the execution of the CBA would govern. The CBA

---

[1] The parties do not dispute that the CBAs at issue in this appeal all contained the recited language relating to the thirteenth check.

also expressly referenced the retirement ordinance, the language of which has, since 1986, made the payment of the thirteenth check discretionary.[2] Accordingly, from both the plain language of the retirement ordinance, as well as the CBA, it is clear that any payment of the thirteenth check was considered discretionary on behalf of respondent.

Charging party also contends that a past practice existed between the parties where retirees have been paid the thirteenth check since the 1980s, and that respondent has never placed a cap on how much could be placed in the Inflation Equity Fund (IEF), or the disbursement amount. Charging party makes an analogous argument that the parties had a past practice of permitting labor representatives to weigh in and approve of any amendments to the retirement ordinance. According to charging party, these past practices became terms of the collective bargaining agreement. In *Macomb Co*, 494 Mich at 81, our Supreme Court cautioned that "[u]nambiguous language in a collective bargaining agreement dictates the parties' rights and obligations even in the face of a conflicting past practice, 'unless the past practice is so wisely acknowledged and mutually accepted that it creates an amendment to the contract.'" *Id*., citing *Port Huron Ed Ass'n*, 452 Mich at 329 (footnote omitted.) Specifically, the Michigan Supreme Court stated, in pertinent part, as follows:

> The party that seeks to overcome ambiguous contract language "must show the parties had a meeting of the minds with respect to the new terms or conditions so that there was an agreement to modify the contract."
>
> We clarify the *Port Huron* analysis to explain that this is an exceedingly high burden to meet. Any lesser standard would defeat the finality in collective bargaining agreements and would blur the line between statutory unfair labor practice claims and arbitrable disagreements over the interpretation of collective bargain agreements. *As a result, the party that seeks to overcome an unambiguous collective bargaining agreement must present evidence establishing the parties' affirmative intent to revise the collective bargaining agreement and establish new terms or conditions of employment*. Moreover, because "arbitration has come to be the favored procedure for resolving grievances in federal and Michigan labor relations," doubt about whether a subject matter is covered should be resolved in favor of having the parties arbitrate the dispute. The arbitrator, not the MERC, is ordinarily best equipped to decide whether a past practice has matured into a new term or condition of employment. [*Macomb Co*, 494 Mich at 82 (emphasis supplied; footnote omitted).]

While charging party contends that it need only make a showing of a "tacit agreement" that the parties' past practice would form a term of the underlying agreement, given its assertion that the collective bargaining agreement is silent on the issue of the thirteenth check, see *id*. at 82 n 49, this argument is not persuasive.

---

[2] We have closely reviewed the applicable language of the retirement ordinance, and its amendments, in reaching this conclusion.

Even accepting charging party's factual assertions regarding the existence of a past practice (1) concerning payment of the thirteenth check and (2) the involvement of the labor unions in negotiating this benefit, the doctrine does not provide a mechanism for charging party to amend the express terms of the CBA under the circumstances of this case. Specifically, contrary to what charging party argues, the CBA language is not silent on the issue of the thirteenth check. Instead, the CBA language specifically states that the language of the retirement ordinance will control, and the retirement ordinance language is clear that the payment and disbursement of the thirteenth check is very much discretionary. Additionally, there is nothing in the language of the CBA regarding the applicability of the retirement ordinance that provides that charging party, or any labor representatives, must approve any amendments to the ordinance. Moreover, charging party is hard-pressed to argue that any past practice overcomes the unambiguous terms of the CBA, given that respondent strenuously argues that the payment of the thirteenth check was always discretionary. Put another way, under the facts of this case, charging party cannot establish a "meeting of the minds with respect to the new [alleged] terms or conditions" to the extent that it can be said that there was an agreement to modify the express terms of the CBA. *Macomb Co*, 494 Mich at 89, quoting *Port Huron Ed Ass'n*, 452 Mich at 332 n 16.[3]

In Docket No. 327782, respondent contends that the MERC erred in concluding that the subject of the thirteenth check was a mandatory subject of bargaining. Respondent also contends that during the fact-finding process following the expiration of the non-supervisory agreement, respondent did not bear a duty to bargain on the subject of the thirteenth check or to notify charging party concerning the proposed amendments to the retirement ordinance during the fact-finding period.[4] We disagree.

Subsection 15(1) of PERA imposes the following obligations on a public employer with regard to collective bargaining:

---

[3] The remaining elements required to support a claim of contract repudiation are that the breach of the CBA be substantial and that it have a substantial effect on the bargaining unit at issue. Given our conclusion with regard to the first element, it is not necessary to address these remaining elements.

[4] In its brief on appeal in Docket No. 327782, respondent asserts that it did not have a duty to bargain with charging party before amending the terms of the retirement ordinance. It should be noted that this presents a distinct question from whether respondent breached its duty to bargain in good faith during the fact-finding period after the non-supervisory agreement expired when it failed to notify charging party of the revisions it was making to the retirement ordinance. We have concluded that the MERC correctly determined that the parties' dispute regarding contract interpretation is best left to be addressed according to the CBA grievance procedures where the CBA expressly covered the issue of the thirteenth check. As the Michigan Supreme Court has stated, once the parties have bargained collectively about a subject, and the CBA language covers the matter in dispute, the duty to bargain has been satisfied. *Macomb Co*, 494 Mich at 79. Accordingly, the issue raised by respondent does not require additional analysis.

A public employer shall bargain collectively with the representatives of its employees as described in [MCL 423.211] and may make and enter into collective bargaining agreements with those representatives. *Except as otherwise provided in this section, for the purposes of this section, to bargain collectively is to perform the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment,* or to negotiate an agreement, or any question arising under the agreement, and to execute a written contract, ordinance, or resolution incorporating any agreement reached if requested by either party, but this obligation does not compel either party to agree to a proposal or make a concession. [MCL 423.215(1) (emphasis added).]

Accordingly, the pivotal issue to be determined is whether the MERC erred as a matter of law in concluding that the thirteenth check amounted to a "term[ ] [or] condition of employment," to the extent that respondent bore a duty to negotiate with charging party in good faith during the fact-finding period.

In *St Clair Intermediate Sch Dist*, 458 Mich at 551, the Michigan Supreme Court set forth the legal principles for determining whether a particular subject constitutes a mandatory subject of bargaining:

Mandatory subjects of collective bargaining are comprised of issues that "settle an aspect of the relationship between the employer and employees," *Allied Chem & Alkali Workers of America v Pittsburgh Plate Glass*, 404 US 157, 178; 92 S Ct 383; 30 L Ed 2d 341 (1971), and include, but are not limited to, terms and conditions of employment concerning hourly, overtime, and holiday pay, work shifts, pension and profit sharing, grievance procedures, sick leave, seniority, and compulsory retirement age. *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44; 214 NW2d 803 (1974).

The statutory duty to bargain will be satisfied when the parties meet in good faith and bargain over the disputed subjects. *Detroit Police Officers Ass'n*, 391 Mich at 55. Generally, if the parties are not able to reach an agreement after bargaining in good faith, they are said to be at an "impasse[,]" and an employer is permitted to take unilateral action on an issue so long as such action is congruent with its final offer to the union. *Id*. at 56. In the public sector, such as is at issue in this case, the procedures may vary.

The concept of unilateral action after impasse is also recognized in the public sector. The public sector has, however, begun to institute procedures such as fact-finding and arbitration that require the parties to actually negotiate beyond impasse. [*Id*. at 56.]

In *Detroit Police Officers Ass'n, id*. at 63, the Michigan Supreme Court referred to well-settled federal precedent, *Inland Steel Co v NLRB*, 77 NLRB 1; 21 LRRM 1310, enforced 170 F2d 247 (CA 7, 1948), which "firmly established that pension and retirement provisions are mandatory subjects of bargaining under the NLRA." More recently, in *Macomb Co*, 494 Mich at 78, the Michigan Supreme Court, when considering the Macomb County Retirement Commission's

ability to adopt actuarial calculations, recognized that "the calculation of retirement benefits is a mandatory subject of collective bargaining." (Footnote omitted.) See also *Senior Accountants, Analysts & Appraisers Ass'n v Detroit*, 218 Mich 263, 273; 553 NW2d 679 (1996) (recognizing that *Detroit Police Officers Ass'n* does "unquestionably state that . . . retirement provisions are mandatory subjects of bargaining[.]"). This Court has recognized that the "test generally applied to determine whether a matter is a mandatory subject of bargaining is whether it has an impact upon wages, hours, or conditions of employment, *or settles an aspect of the employer-employee relationship.*" *City of Detroit v Michigan Council 25, AFSCME*, 118 Mich App 211, 215; 324 NW2d 578 (1992) (emphasis supplied).

Respondent raises a series of creative and novel arguments on appeal that challenge the MERC's ultimate conclusion that the issue of the thirteenth check was a mandatory subject of bargaining. According to respondent, the thirteenth check was a permissive subject of bargaining, and therefore it did not bear a duty to bargain with charging party over this matter. Specifically, respondent argues that there is a distinction between "retiree" benefits that a retiree obtains following employment, and "retirement" benefits, which are closely related to, accrue during, and arise from an employee's employment. In support of the assertion that a matter must accrue to an employee out of the employment relationship, respondent points to *Inland Steel Co*, where the National Labor Relations Board considered section 9(a) of the NLRA, concluding that the term "wages" in that subsection ought to be construed in a manner that included "emoluments of value, like pension and insurance benefits, which may accrue to employees out of their employment relationship." Respondent also points to the MERC's multiple conclusions in its decision and order that the thirteenth check is a discretionary payment, asserting that such a factual finding is inconsistent with its ultimate legal determination that it is a mandatory subject of bargaining. Respondent also points out, consistent with *Butler v Wayne Co*, 289 Mich App 664, 672; 798 NW2d 37 (2010), that because retirees are not members of the bargaining unit, changes to their benefits will not amount to an unfair labor practice.

While the record, specifically the relevant terms of the retirement ordinance, does confirm that the disbursement of the thirteenth check was discretionary on the part of the respondent, the MERC's legal conclusion that it amounted to a mandatory subject of bargaining amounted to a reasoned and principled application of the law. Most recently, the Michigan Supreme Court confirmed that retirement provisions are mandatory subjects of bargaining. *Macomb Co*, 494 Mich at 78. The thirteenth check, aimed at supplanting retirement benefits and to assist retirees with dealing with the cost of inflation, is undoubtedly related to the retirement provisions that are set forth in the collective bargaining agreements. As noted, while respondent raises interesting arguments contesting the MERC's legal determination, these arguments are simply a distraction from the core legal principle that determines whether a topic is a subject of mandatory bargaining. That is, as relevant to this appeal, whether the issue is one that "settle[s] an aspect of the relationship between the employer and employees." *Allied Chemical*, 404 US at 178; *City of Detroit*, 118 Mich App at 215. Where the record confirms that respondent established the thirteenth check to assist retirees with dealing with inflation and increased costs of living, it was reasonable, and in accordance with governing law, for the MERC to conclude that it amounted to a mandatory subject of bargaining. Where the MERC's legal conclusion amounted to a principled and reasonable application of the law, its decision ought not to be disturbed on appeal. *Calhoun Intermediate School Dist*, 314 Mich App at 46.

Respondent also contends that the MERC erred in concluding that it breached its duty to bargain in good faith when it failed to notify charging party that it was amending the retirement ordinance during the time period following the expiration of the non-supervisory CBA when the parties were engaged in fact-finding. As relevant to this appeal, respondent's CBA with the non-supervisory unit expired in 2008. During the period that respondent was undertaking amendments to the retirement ordinance, it had entered into the fact-finding process[5] with the non-supervisory unit after negotiations subsequent to the expiration of the agreement had stalled. At issue is whether the MERC correctly concluded that respondent engaged in an unfair labor practice when it amended the retirement ordinance during the fact-finding process that ensues following an impasse.

The MERC has held that "even in the event of a good faith impasse, a party may not unilaterally impose changes in mandatory subjects of bargaining after fact[-]finding has been requested." *In re Wayne Co*, 24 Mich Pub Emp Rep 25 (2011) (Case No. C10 A-024), aff'd *Wayne Co v AFSCME Council 25*, unpublished opinion of the Court of Appeals, issued February 13, 2014 (Docket No. 303672). The MERC has also recognized that the duty to bargain in good faith endures following the issuance of the fact-finder's report, and that the parties ought to continue to bargain for a reasonable time following the issuance of the report, which the MERC has stated is 60 days in most cases. *In re Oakland Community College*, 15 Mich Pub Emp Rep 33006 (2001) (Case No. C99 F-111).

In this case, the MERC noted that the fact-finder's report was issued on September 17, 2010, and that respondent amended the retirement ordinance within two weeks of that report being issued. Citing *In re Orion Twp*, 18 Mich Pub Emp Rep 72 (2005) (Case No. C03 E-121), the MERC stated that where respondent acted to change a mandatory subject of bargaining during the period after the fact-finder's report was issued, respondent engaged in an unfair labor practice. The MERC also concluded that where the parties had entered into the "post-fact finding mandatory negotiations period," respondent was obligated to give notice and an opportunity to bargain to charging party before taking action that would alter a mandatory subject of bargaining. The MERC took care to note that while nothing in the express terms of the expired CBA precluded respondent from amending the retirement ordinance, respondent nonetheless had a duty to give charging party notice of the impending revisions, and the opportunity to bargain over the substance of the revisions. According to respondent, the MERC's conclusion that it did not notify charging party of the proposed amendment to the retirement ordinance is not supported by the record, where the record confirms that charging party was aware of respondent's intentions, starting in the summer of 2010.

---

[5] Fact-finding proceedings "are a creature of statute and are a part of the bargaining process. Fact-finding is a mechanism designed to assist parties in fulfilling their mutual obligations to bargain in good faith and . . . are intended to deter disruptions of public services as a result of unsolved labor disputes." *In re Wayne Co*, 28 Mich Pub Emp Rep 35 (2014) (Case No. C10 A-024-A). MCL 423.25(1) provides specifically for the process of fact-finding.

There is evidence in the lower tribunal file to suggest that charging party was aware of the proposed amendments to the ordinance. In any event, the MERC's conclusion that respondent failed to notify charging party appeared to rest on its concern that by conducting itself the way it did, respondent failed to act in good faith during the negotiation process. For example, the MERC, in its decision, pointed to *Macomb Co*, 494 Mich at 78-79, where the Michigan Supreme Court instructed that "[g]ood faith requires a party to be 'actively engaged in the bargaining process with an open mind and a sincere desire to reach an agreement.'" (Citation and footnote omitted.) Under the circumstances, where respondent was required to continue to negotiate in good faith after the non-supervisory agreement expired, and during the fact-finding process, the MERC's conclusion that respondent engaged in an unfair labor practice where it amended the retirement ordinance without notifying charging party was supported by competent, material and substantial evidence in the record. *Calhoun Intermediate Sch Dist*, 314 Mich App at 46.

Charging party also argues on appeal in Docket No. 327727 that the MERC erred in concluding that it had a duty to request bargaining on the subject of the thirteenth check. According to charging party, the authority that the MERC cited was not applicable to circumstances such as in the present case, where charging party alleged that respondent repudiated the CBA during fact-finding. This Court very recently set forth the legal principles regarding a public employer's duty to bargain, noting that it is conditioned on the employee union requesting bargaining.

> Pertinent to the case at bar, PERA imposes on public employers a duty to bargain collectively with the representatives of its employees "in good faith with respect to wages, hours, and other terms and conditions of employment. . . . " MCL 423.215(1). See also *AFSCME Local 25 v Wayne Co*, 297 Mich App 489, 494; 824 NW2d 271 (2012) (explaining that PERA imposes a duty to bargain collectively upon the expiration of a CBA). Wages, hours, and other conditions of employment, including health insurance benefits, are "mandatory subjects of bargaining." *Ranta v Eaton Rapids Pub Sch Bd of Ed*, 271 Mich App 261, 270; 721 NW2d 806 (2006). *While a public employer has a duty to bargain, that duty is not implicated absent a request by the employees to enter into negotiations. St Clair Prosecutor v AFSCME, AFL–CIO, St Clair Co Gen Employees Chapter, Local 1518*, 425 Mich 204, 242; 388 NW2d 231 (1986). Thus, an employer's duty to bargain is "expressly condition[ed]" on the employees' request for bargaining. *Local 586, SEIU v Village of Union City*, 135 Mich App 553, 557; 355 NW2d 275 (1984). [*Van Buren Co Ed Ass'n*, 309 Mich App at 641.]

Put simply, the MERC in this case clearly held that respondent violated its duty to bargain with charging party by moving forward with the retirement ordinance amendments when the parties were engaged in the fact-finding process. Where the MERC also concluded that any error on the part of respondent was harmless to charging party, given that the parties entered into a subsequent agreement that did not alter the impact of the 2010 amendments to the retirement ordinance, and where the MERC's recitation of the relevant law is consistent with recent authority from this Court, we leave its reasoning and ultimate order undisturbed.

-11-

Affirmed.

/s/ Michael F. Gadola
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan